JOHN JEFFREY McPARTLIN AND GREGORY McPARTLIN, PLAINTIFFS AND RESPONDENTS, v. DAVID RANDLE FRANSEN ET AL., DEFENDANTS, THIRD-PARTY COMPLAINANTS AND APPELLANTS, v. HARRY VOSE, THIRD-PARTY DEFENDANT.

No. 13980.
Submitted March 3, 1978.
Decided Aug. 16, 1978.
Rehearing Denied Sept. 7, 1978.
582 P.2d 1255

Graybill, Ostrem, Warner & Crotty, Great Falls, Leo Graybill, Jr., argued, Great Falls, for defendants, third-party complainants and appellants.

Daniels & Mizner, Deer Lodge (Ted L. Mizner, Deer Lodge, argued), for plaintiffs and respondents.

MR. JUSTICE SHEA delivered the opinion of the Court.

Defendants appeal from an order of the Deer Lodge County District Court denying relief from a default judgment and denying their motion for a new trial.

On or about August 14, 1976, plaintiffs, as lessees and defendants as lessor, executed an agreement entitled Lease and Sales Right Agreement. This agreement gave the plaintiffs immediate possession of KDRG Radio Station, located in Deer Lodge, Montana. The other lease provisions are unimportant for purposes of this appeal and will not be discussed in any detail.

On December 9, 1976, the lessees filed a complaint in Powell

County District Court alleging lessor had breached the August 14, 1976 agreement. The complaint sought rescission of the contract, restitution of the down-payment, general and special damages in an unspecified amount and a temporary restraining order prohibiting the defendants from further interference with the lessees' business operations.

On December 9, 1976, Judge Boyd granted a temporary restraining order and scheduled a show cause hearing for December 30, 1976. The defendants did not appear for the December 30, 1976 hearing. Instead, on January 3, 1977, defendants filed a motion to dismiss and a petition requesting plaintiffs be required to relinquish possession of the leased premises. The Court scheduled all pending matters for hearing on January 7, 1977.

On January 7, 1977, Judge Blair, sitting in for Judge Boyd, denied the defendants' motion for dismissal and took the plaintiffs' motion for a permanent injunction and defendants motion for relinquishment under advisement. While Judge Blair was weighing the merits of the parties' motions and while the December 9, 1976 temporary restraining order was still in effect, defendant Fransen took matters into his own hands. Fransen barricaded the only road providing access to the radio station. He also took steps to have the Montana Power Company and the United States Postal Service discontinue service to the radio station.

On February 4, 1977, plaintiffs filed a petition, supported by affidavit, requesting the District Court to cite defendant Fransen for contempt of court. A hearing to determine the appropriateness of a contempt citation was held, and on March 11, 1977, Judge Blair found David Fransen in contempt of court. The court fined him $1,000 and sentenced him to 10 days in jail. At the time sentence was imposed, Judge Blair also denied Fransen's petition for return of the leased premises.

On March 23, 1977, defendants' attorneys filed a notice of appeal for the contempt citation. However, this initial notice was the only action taken to perfect defendants' appeal. Apparently, after the original notice was filed. Mr. Fransen left the State of Montana.

On June 10, 1977, after Fransen's notice of appeal had been properly filed, the Clerk of the Powell County District Court informed the attorneys for both plaintiffs and defendants that a "hearing" was docketed for July 27, 1977. Later, on June 24, 1977, the Clerk of the Court issued a supplemental notice to all the attorneys informing them the "hearing" scheduled for July 27 was to be a full trial on the merits.

After receiving the notice setting the date for the "hearing", but before receiving the notice that a full trial was scheduled, Fransen's two attorneys instituted proceedings to withdraw.

On July 12, 1977, Judge Blair issued a final order allowing Fransen's counsel to withdraw from the case. This withdrawal was communicated to Mr. Fransen by sending him a copy of his attorneys' petition to withdraw and a document entitled Notice of Withdrawal of Attorneys. These documents were sent to Fransen at his last known mailing address in Deer Lodge, Montana.

It is undisputed that Mr. Fransen received the documents on or about July 7, 1977, and he was thereby notified of his attorneys' desire to withdraw as his counsel. The record does not reflect, however, that Mr. Fransen was ever informed by his counsel, by opposing counsel or by the Court, that a trial was scheduled for July 27, 1977. The only record of any notice of trial date are documents from the Federal Communications Commission (F.C.C.). These F.C.C. documents placed Mr. Fransen on notice that some type of proceeding was scheduled for July 27, 1977. In an affidavit, defendant Fransen states, he did not know July 27, 1977 was the date set for a full trial on the merits. In any event, the record shows Mr. Fransen was not represented by counsel from July 12, 1977 until July 26, 1977, the date he obtained a new attorney to handle the case.

When his new attorney was informed by the Deer Lodge District Court that a full trial was scheduled for the following day, he immediately contacted the opposing counsel and the trial judge to attempt to continue the trial date for a reasonable time. Opposing counsel refused to stipulate to a continuance and the trial court

stated it would treat the matter as a request for a continuance and would rule the following morning, on the day set for trial. The new attorney called the trial court from Great Falls the following morning, only to learn the trial court refused to grant a continuance. Trial was then completed on that day, without defendant Fransen or his new attorney taking part.

The Court entered defendant Fransen's default and then plaintiff introduced evidence and called witnesses. The Court entered its findings and conclusions the same day and entered judgment for the plaintiffs in the amount of $291,197.05.

One week later, defendant Fransen filed motions for a new trial, to set aside and vacate final judgment and for a stay of execution of the judgment. On August 15, 1977, the Court held a hearing on the motions and took them under advisement. On August 24, 1977, the Court denied the motions and the following day filed its written order and opinion denying the motions. Defendant appeals from the order denying his motions.

Defendant raises two issues for our review:

(1) Whether the District Court had jurisdiction to enter a judgment against appellant while an appeal of a related contempt order was pending before the Supreme Court; and,

(2) Whether the District Court's order denying his motions for a new trial was unreasonable and a denial of due process.

Defendant first argues that by appealing the contempt order he divested the District Court of all jurisdiction in the underlying civil matter. This position is without merit.

It is fundamental that the filing of a notice of appeal to review the propriety of a contempt citation does not divest the District Court of jurisdiction over the underlying civil matter. Contempt proceedings are entirely independent of the civil action from which they arise. *State ex rel. Enochs v. District Court* (1942), 113 Mont. 227, 123 P.2d 971. Accordingly, the District Court acted well within its powers by proceeding to trial with the civil action.

Defendants next contend adequate grounds exist to set aside the

District Court judgment entered July 27, 1977. The thrust of defendants' argument is directed to the propriety of the District Court's refusal to grant him a reasonable continuance.

The facts show defendants' original attorneys were allowed to withdraw on July 7, 1977, only 20 days prior to the date set for trial. Defendants' attorneys were required to comply with section 93-2102(2), R.C.M.1947, which provides:

"93-2102. *Change of attorney.* The attorney in an action or special proceeding may be changed at any time before or after judgment, or final determination, as follows:

"1. Upon consent of both client and attorney, filed with the clerk, or entered upon the minutes.

"2. Upon the order of the court, upon the application of either client or attorney, after notice from one to the other."

█ The issues raised by defendants are not directed to the propriety of their attorneys withdrawal, but are directed to the sufficiency of the notice given after they withdrew. Fransen contends he was never informed of the pending trial date and this lack of notice mandated a reasonable continuance so he could prepare himself for trial.

Section 93-2104, R.C.M.1947, provides:

"93-2104. *Death or removal of attorney.* When an attorney dies, or is removed or suspended, *or ceases to act as such,* a party to an action, for whom he was acting as attorney, must, before any further proceedings are had against him, be required by the adverse party, by written notice, to appoint another attorney or appear in person." (Emphasis added).

This statutory provision is identical to section 286 of the Cal. Code Civ.Proc. The obvious purpose of section 93-2104, is to provide notice to a party who might otherwise be taken unaware. Defendant Fransen argues that he should have received section 93-2104, R.C.M.1947, notice before the District Court set the matter for trial. Conversely, the respondents claim that all notice requirements were fully satisfied. To resolve the conflict between the

parties, we must look to Montana's interpretation of section 93-2104.

The most recent case dealing with the requirements of section 93-2104, is *Sikorski and Son v. Sikorski* (1973), 162 Mont. 442, 512 P.2d 1147. The issue before the Court was:

"(1) Whether under section 93-2104, R.C.M.1947, an adverse party is required to advise the opposite party to appoint another lawyer or appear for himself when the opposite party's lawyer, *with the consent of that party*, withdraws from the case; * * *" (Emphasis added). *Sikorski*, p. 446, 512 P.2d p. 1149.

This Court, in a unanimous decision, held that section 93-2104 notice was not required where the attorney withdrew with the consent of the client.

The facts presented here are not the same as those presented in *Sikorski*. In *Sikorski*, the attorneys withdrew pursuant to section 93-2102(1), R.C.M.1947, and not pursuant to 93-2102(2), R.C.M. 1947. Under section 93-2101(1), R.C.M.1947, withdrawal can be achieved by mutual consent of the attorney and client, either filed in writing, or set out in the official minutes of the clerk. Under section 93-2101(2), however, an attorney may petition the Court for permission to withdraw, even though his client has not consented. The record shows defendants' original attorneys withdrew without their clients permission, thereby distinguishing this case from *Sikorski*.

When a client consents to his attorney's withdrawal, nothing would be gained by requiring his opponent to request a substitution of counsel or a personal appearance. This rationale was the essence of the *Sikorski* decision. But different considerations arise when an attorney, without his client's consent, petitions the District Court for permission to withdraw under section 93-2102(2), R.C.M.1947.

When an attorney petitions under section 93-2102(2), he is required to give "notice" to his client. The section does not specify what the "notice" should contain, nor does it designate the proper method for serving the notice. Situations will naturally arise where

a litigant will not receive his attorney's notice of withdrawal, or if he receives it, the notice will not be sufficient to inform him of the status of the pending litigation. In such situations, the unrepresented party should not be denied a fair trial simply because at the eleventh hour he is left without representation. Nor do we feel that in such situations an opposing counsel, who has notice of the withdrawal, can sit idly by and perhaps secretly hope the other party may not show up with counsel, or perhaps may not show up at all. It is only fair under the circumstances that the party with notice of the withdrawal take reasonable steps to inform the opposing party of the appointed trial date and that he should either obtain new counsel or proceed to trial without counsel.

Having determined an opposing party has a duty to request a personal appearance or a substitution of counsel before proceeding further, it is the duty of this Court to supply some guidelines for giving such notice. We do not believe actual notice must be personally served on the unrepresented party opponent. But we do hold the represented party must make a positive showing he has attempted to communicate adequate notice to the unrepresented party. If the represented party can show he made a good faith effort to notify the unrepresented party and advise him he should substitute counsel or appear in person, and the notice also sets forth the date of the next hearing or action in the matter pending, then the represented party will be deemed to have satisfied the requisites of section 93-2104, R.C.M.1947.

By imposing this duty on the represented party, we do not intend to stall justice, rather, we hope such notice will enable justice to be carried out as fairly and expeditiously as possible.

This Court recognizes that our decision may not be in accord with California decisions construing section 286 of the Cal.Code Civ.Proc. See: *DeRecat Corp. v. Dunn* (1926), 197 Cal. 787, 242 P. 936; and *Gion v. Stroud* (1961), 191 Cal.App.2d 277, 12 Cal.Rptr. 540.

We note the position adopted by the California courts is clearly a restrictive interpretation of their section 286. We do not

feel it serves public policy to be as restrictive. Clearly, the overriding purpose of our statute is to impose some duty on the opposing party to notify if he determines such party is, without his consent, no longer represented by counsel. By declaring this rule we believe there will be more assurance that each party will fulfill his obligations as to notice.

This case is accordingly, remanded to the District Court with directions to set aside the previous judgment and to grant a new trial to defendants.

MR. JUSTICE DALY, concurring.

MR. JUSTICE HARRISON, concurring.

I concur. However, I do not approve of the tactics of defendant in this matter, causing the numerous delays and thwarting all of the efforts that were made to bring this to trial. In my opinion, his actions are contemptuous of the trial court and it is only my desire to see the matter totally heard that brings about my conclusions.

MR. B. W. THOMAS, District Judge, sitting in for a vacancy, dissenting.

I dissent. While the interpretation placed on Section 93-2104 by the majority of the Court is a reasonable one, I believe that it is clearly at odds with the interpretation adopted in *Sikorski*, on which Court and counsel below were entitled to rely. Contrary to the statement in the majority opinion that "Defendant Fransen argues that he should have received Section 93-2104, R.C.M.1947 notice before the District Court set the matter for trial", counsel for that defendant has conceded that such notice was not required under the *Sikorski* ruling. The real issue here is whether the District Court abused its discretion in denying the motions to vacate the judgment and for a new trial. While there are reasons to disagree with that decision, the record also shows circumstances sufficient to justify it. I would find no abuse of discretion and would affirm.