No. 79-80

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

AUDIT SERVICES, INC., a Montana Corp.,

Plaintiff and Respondent,

-vs-

KRAUS CONSTRUCTION, INC., a corp.,
and JAMES KRAUS, SR., d/b/a KRAUS
CONSTRUCTION,

Defendants and Appellants.

---

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade, The Honorable
Joel G. Roth, Judge presiding.

Counsel of Record:

For Appellant:

Barry T. Olson, Great Falls, Montana

For Respondent:

Cure and Borer, Great Falls, Montana

---

Submitted on Briefs: May 27, 1980

Decided: July 22, 1980

Filed: JUL 23 1980

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Appellants Kraus Construction, Inc., and James Kraus, Sr., appeal from an entry of a default judgment and an order refusing to vacate the judgment. The order of default was entered by the trial court due to appellants' failure to comply with earlier discovery orders. The sole issue before this Court is whether the trial court erred in failing to set aside the default judgment entered against appellants for failure to answer the interrogatories under the circumstances set forth below.

Respondent Audit Services, Inc., is a collection agency for a union trust fund. As such, it brought this action to enforce appellants' alleged obligation to make contributions to the trust fund under a collective bargaining compliance agreement.

Although the judgment here was entered on March 5, 1979, this lawsuit was initiated over three and one-half years earlier in October 1975. The facts reveal that this appeal is not concerned with the typical "first appearance" default judgment in which a defendant is served with summons and a complaint but fails to appear within twenty days as allowed by law. Rather, here the record initially presents a picture of a vigorously contested lawsuit. The record indicates that appellants were represented by three consecutive law firms. It further reveals that appellants subsequently abandoned their defenses, and only after several unsuccessful attempts by the District Court to have appellants reinvolve themselves did the court finally enter a default. Now, following the entry of the default by the District Court, appellants attack the default judgment essentially on procedural, rather than substantive, grounds.

In its original complaint filed October 6, 1975, respondent sought to collect $5,095.03 in delinquent contributions owed by appellant Kraus Construction, Inc., to respondent's assignors, trustees of a certain Montana construction industry employee benefit trust fund, together with reasonable attorney fees. Having been served with process, appellants failed to appear within twenty days of the service. A "first appearance" default judgment was entered. Execution issued and a judgment was collected by the Cascade County sheriff. The execution by the sheriff on funds of Kraus Construction, Inc., prompted appellants to take action. Appellants moved to set aside the default judgment, and following a hearing on December 11, 1975, the District Court granted the motion. On December 16, 1975, appellants filed their answer and added a counterclaim for a refund of $477.09 for alleged overpayments to respondent's assignors.

In January 1976 appellant moved for a return of the funds collected under the sheriff's levy. On February 4, 1976, the District Court ordered the return of a portion of those funds with the balance being deposited with the clerk of the court. On April 29, 1976, an affidavit of disqualification was filed by Pat Kraus. Pat Kraus is the wife of James Kraus, Sr., but the affidavit failed to allege any relation to the then sole defendant, Kraus Construction, Inc. Pursuant to the affidavit, the district judge disqualified himself and the Honorable R. J. Nelson assumed jurisdiction.

Discovery was initiated on June 25, 1976, with appellants' first interrogatories and requests for admissions. The balance of 1976 and the first ten months of 1977 were consumed by repeated appearances before the District Court

over the sufficiency of respondent's answers to those requests and interrogatories, and by amending and supplementing versions of the interrogatories profounded by appellants and respondent's subsequent responses to them. During this time, Judge Nelson retired from the bench and was succeeded by the Honorable H. William Coder in January 1977. Because Judge Coder's former law firm was representing appellants, he disqualified himself, calling in first the Honorable W. W. Lessley and subsequently, the Honorable Joel G. Roth. It was not until November 1, 1977, that appellants had filed and Audit Services had answered four sets of interrogatories. In the interim, there had been two hearings called by appellants to question the sufficiency of those responses.

Respondent's discovery began with the deposition of James Kraus, Sr., taken November 17, 1977. He was the principal in Kraus Construction, Inc., and an originally-named defendant. (It should be noted that the Kraus Construction, Inc., was not organized as a corporation until February 1976, some five months after the lawsuit began.) Also in November 1977, a representative of respondent conducted a new audit of appellants' records covering the period of May 1, 1975 to June 30, 1977.

Following the deposition of James Kraus, Sr., respondent moved to amend its complaint to combine the amounts claimed in the original complaint with the delinquencies revealed by the audit conducted in November 1977. The amended complaint also sought to hold James Kraus, Sr., personally liable for the debts of Kraus Construction, Inc.

A hearing on the request to amend the complaint was set for December 21, 1977. However, one day before that hearing, appellants' attorneys moved ex parte to withdraw. The

motion indicated that a copy had been served on appellants. On the same day, the court ordered that the attorneys could withdraw. The court's order stated that a copy was to be served by the sheriff on James Kraus, Sr., and that appellants were to appear through new counsel within twenty days. Respondent, in turn, vacated its December 21, 1977, hearing.

Appellants failed to comply with the court's order and did nothing. On January 30, 1978, respondent renoticed its hearing on the motion for leave to amend the complaint. Hearing on the motion was set for February 15, 1978. Since appellants had failed to retain new counsel, a copy of the notice was served upon their former attorneys and upon James Kraus, Sr., personally.

On February 15, 1978, appellants retained new counsel and appeared at the hearing on the motion for leave to amend the complaint. On February 23, 1978, the court granted respondent Services leave to file a portion of its amended complaint. Appellants filed their answer on March 14, 1978.

On April 27, 1978, respondent filed its first requests for admissions. These requests set forth respondent's theory of its case, asking Kraus Construction, Inc., to admit that it was a party to various collective bargaining agreements and trust agreements underlying respondent's claim. Appellants were further asked to admit the accuracy of the audits underlying the dollar amount of the amended complaint. Copies of these audits were attached to the exhibits for the requests for admission. Appellants filed a timely response to the requests. They denied the accuracy of the audits, specifically denying first that all of the persons listed in the audit were employees and second, that the persons listed therein performed work coming under the

scope of relevant collective bargaining agreements.

Based on those denials, respondent filed its first interrogatories on June 2, 1978. Those interrogatories sought specific information underlying appellants' denial--asking which of the persons listed in the audits of appellants' payroll records were not in fact its employees, and which of them did not perform work coming within the scope of the collective bargaining agreements. Appellants failed to answer those interrogatories or to tender any objections to them.

Having received no answers to the interrogatories, on October 3, 1978, respondent moved for an order compelling appellants under Rule 37, M.R.Civ.P. A hearing on this motion was set for October 25, 1978. One day before the hearing, on October 24, 1978, appellants' attorneys made an ex parte application to the District Court to withdraw as counsel. This application was granted, and another of respondent's motions to bring this lawsuit to fruitation had to be put off. As with the withdrawal of appellants' first counsel, the District Court ordered a copy of the order allowing the withdrawal of appellants' second counsel and requiring new counsel to appear within twenty days to be served upon James Kraus, Sr. Once again, appellants failed to obey the court's order.

On January 3, 1979, respondent, after waiting approximately two months for appellants to do something, renoticed its request for a hearing on the long-pending motion to compel answers to the interrogatories submitted some seven months earlier. Hearing was set for January 17, 1979. Once again, a copy was sent to James Kraus, Sr., and to his former attorneys. The District Court on its own initiative

reset the hearing from January 17, 1979 to January 25, 1979, because of a conflict in its calendar. An order for the change of this date was served on James Kraus, Sr., and there is no denial that he received it.

Pursuant to the court's order, a hearing on respondent's motion to compel answers to interrogatories was finally held on January 25, 1979. No appearance was made by or on behalf of appellants. However, the relief awarded by the District Court was strictly in accord with that provided by Rule 37, M.R.Civ.P. Appellants were given an additional twenty days to answer the interrogatories, or in lieu thereof, their answer was deemed stricken such that their default could be entered. A copy of this order dated January 29, 1979, was served on James Kraus, Sr., and he does not deny receiving it. Appellants failed to obey the final order of the court by answering the interrogatories, and no new counsel appeared for them regarding this litigation.

On February 26, 1979, respondent filed a notice of its intention to apply for a judgment of default on March 5, 1979, at the Cascade County Courthouse. Kraus was served with a copy of this notice also, and he does not deny receiving it.

The hearing on respondent's application for default judgment was held on March 5, 1979. No one appeared on behalf of appellants. Respondent's attorneys were sworn and testified concerning attorney fees. A judgment in conformance with the default was entered on March 7, 1979. Notice of its entry was mailed by the clerk of the court to James Kraus, Sr., and he does not deny receiving it.

Following entry of the default, appellants did nothing. On March 8, 1979, on application of respondent, the District

Court signed an order releasing the funds which had been held by the clerk of the court since their original deposit in 1975 when the first default judgment was set aside. A copy of that order was filed on James Kraus, Sr., and he does not deny receiving it. On March 14, 1979, a writ of execution was issued, and levy was made by the Cascade County sheriff's office on March 19, 1979, which resulted in securing $2,100 on deposit in a bank account of one of appellants. This execution apparently brought appellants around to doing something, and on the same day James Kraus, Sr., delivered files to a new attorney.

Immediately after and early in April 1979 a number of pleadings were filed by appellants' new counsel. A notice of appeal was filed and later withdrawn. Then a motion for a new trial was filed, even though there had never been a trial. Thereafter, appellants filed a motion to set aside the withdrawal of their second counsel along with a motion to set aside the default judgment supported by an affidavit of James Kraus, Sr. Appellants then ex parte sought and obtained a stay of execution.

The motion concerning the withdrawal of appellants' second attorneys was heard on April 20, 1978. Based on the affidavit of James Kraus, Sr., and on the fact that the motion of the law firm did not indicate that appellants had assented to or acknowledged the withdrawal of the firm, the District Court determined that the order permitting the withdrawal of counsel was improper and set the same aside. The District Court deferred a hearing on appellants' post-judgment motions pending their decision as to who was going to represent them thereafter. A proper substitution of counsel was signed on May 17, 1979, and served on all concerned on May 23, 1979.

Despite the time limits set in Rule 60, M.R.Civ.P., for the determination of motions to vacate default judgments, appellants did nothing regarding their pending post-judgment motions until July 11, 1979, when they noticed them for hearing on August 9, 1979. At that time a hearing was held in court chambers. No testimony was taken; the hearing consisted solely of appellants' arguments. After hearing the arguments, the District Court refused to grant any of appellants' motions, and the default judgment was allowed to stand. Appellants thereafter filed this appeal from the District Court's order of August 9, 1979.

The sole issue for review is whether the trial court erred in failing to set aside the default judgment and default entered against appellants for failure to answer interrogatories under the circumstances of this case.

Appellants make two arguments for setting aside the default judgment. The first is that the District Court abused its discretion in imposing such a harsh sanction. Second, appellants contend that the withdrawal of their second counsel retroactively set aside as improper, "tainted" all subsequent proceedings and, therefore, the default judgment must be set aside. We find neither argument to have merit.

Appellants rely strongly on the general rule that default judgments are not favored and no great abuse of discretion need be found by this Court to set aside such a judgment. Appellants rely principally on the following cases: Kootenai Corp. v. Dayton (1979), _____ Mont. _____, 601 P.2d 47, 36 St.Rep. 1785, 1790-1791; Little Horn State Bank v. Real Bird (1979), ___ Mont. ____, 598 P.2d 1109, 36 St.Rep. 1495; Shields v. Pirkle Refrigerated Freightlines,

Inc. (1979), ___ Mont. ___, 591 P.2d 1120, 1125, 36 St.Rep. 472. We have reviewed these authorities and find them not in point with this case. Each of them deal with "first appearance" default judgments. Another case cited and relied upon by appellants, Simpkins v. Simpkins (1894), 14 Mont. 386, 36 P. 759, deals with a default other than the "first appearance" default. However, Simpkins can easily be distinguished. There the litigation was still in its preliminary stages and the default entered was solely due to the negligence of an out-of-state attorney. Such is not the case here.

We can, however, find cases from other jurisdictions analogous to the circumstances of this case, particularly where the appellant deliberately refused to participate in discovery or to comply with an order of the court issued pursuant to Rule 37 of the Rules of Civil Procedure and whose attorney withdraws during the course of this noncompliance. Most analogous is Gallegos v. Franklin (1976), 89 N.M. 118, 547 P.2d 1160, cert. den. 549 P.2d 284. There the appellate court carefully reviewed the record which indicated that the appellants had failed to answer interrogatories or otherwise cooperate with pretrial discovery. In that case appellants' attorneys withdrew during the proceedings. Thereafter the plaintiffs served upon the appellants a notice of application for a default judgment. The default was based on the appellants' noncompliance with the rules of discovery and the explicit authorization for entry of such a default under Rule 37. In Gallegos the default judgment was allowed to stand, with the court stating as authority language from H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe (D.C. Cir. 1970), 432 F.2d 689, where the court held:

"Given this approach, the default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection. Furthermore, the possibility of a default is a deterrent to those parties who choose delay as part of their litigative strategy. . . " 432 F.2d at 691.

After quoting Livermore, the court in Gallegos went on to say:

"From January 29, 1974, to November 18, 1974, a period of ten months, the defendants failed to comply with the Rules of Civil Procedure. A default judgment may be entered. See Rules 55(a) and 37(d) of the Rules of Civil Procedure.

"In addition, defendants filed a consent to the withdrawal of attorneys after the default judgment was entered. Defendants, having notice of the motion for withdrawal, failed to obtain other attorneys, failed to appear at the hearing on the motion for default judgment, and failed to show any cause, oral or written, why the default judgment should not be entered.

"To grant the defendants a reversal now means that we would give credence to essentially unresponsive parties, and consent that they may halt the adversary process and endlessly delay the rights of plaintiff. The philosophy of the law of civil procedure militates against this protracted wearisome conduct." Gallegos, 547 P.2d at 1164-1165.

The same reasoning can be applied to appellants here.

See also Johnson v. Matelich (1971), 165 Mont. 329, 517 P.2d 731.

As to the second part of appellants' argument, in the affidavit filed with the motion to set aside the default judgment, James Kraus, Sr., stated that he thought that his second counsel was still representing appellants until January 29, 1979, even though the District Court had permitted their withdrawal on October 24, 1978. Appellants make much of the argument that there were no counteraffidavits and so Kraus's affidavit was the only evidence upon

which the District Court should have based its decision. We find this argument without merit.

As to the first point, the affidavit has to be accepted for what it actually is--a self-serving document drawn by appellants' attorney. The general rule is that affidavits "are commonly regarded as weak evidence, to be received with caution," and that "they are not conclusive of the facts stated therein even though not contradicted by counter-affidavits." 32A C.J.S. Evidence §1032 at 706. See also Lohman v. Lohman (1946), 29 Cal.2d 144, 173 P.2d 657, 660.

Here the record before the trial court belied the testimony of Kraus's affidavit, even though the trial court later nullified the withdrawal order. There is no question that a copy of the order allowing the withdrawal of the firm was served on James Kraus, Sr. A receipt was attached to the order of withdrawal indicating that the Cascade County sheriff served Kraus with a copy of the order permitting withdrawal on October 28, 1978. While appellants claim that they had no "notice" of the October 24 order, they did not counter the fact that it was served upon Kraus and that he was personally served with all the motions, notices and orders subsequently filed. There is no question that Kraus, an experienced, capable businessman, had sufficient notice to know what was going on and yet chose to ignore it at considerable risk to himself and his corporation.

In Johnson v. Matelich, supra, in refusing to set aside a default judgment against another deliberately unresponsive litigant, this Court noted:

> "Defendant has made no showing of why he failed
> to file an answer within the time granted by
> the district court. Defendant now asserts that
> he will be prejudiced because he has a good de-
> fense to the claims and now will be unable to

assert the defense. If defendant is in any
way prejudiced, the record clearly shows that
it is by his own failure and disregard to as-
sert his rights when available to him." 163
Mont. at 335, 517 P.2d at 734.

We note particularly the trial court's order of January
29, 1979. Noncompliance with it formed the basis of the
default judgment under Rule 37. That order required appel-
lants to answer interrogatories served eight months earlier
on June 2, 1978. As of the date of respondent's brief
before us, some twenty-two months after the interrogatories
were filed, appellants made no attempt to answer the inter-
rogatories or conform in the slightest with the trial court's
order. On this record we cannot find an abuse of discretion
in the refusal of the trial court to set aside the default
judgment. Appellants did not offer proper answers to the
interrogatories at any time or explain or justify their
refusal to comply. Such matters, in our opinion, would be
a prerequisite to establishing an abuse of discretion.
Given the length of time involved, appellants' default
coupled with their ongoing refusal to rectify it, we are
convinced that appellants failed to meet a showing required
under Rule 60(d), M.R.Civ.P., and the District Court was
correct in refusing to set aside its default judgment.

The next issue raised was whether the withdrawal of
appellants' second set of attorneys voided all subsequent
proceedings. Appellants rely upon McPartlin v. Fransen
(1978), ___ Mont. ___, 582 P.2d 1255, 35 St.Rep. 1191. In
McPartlin this Court ruled under section 93-2104, R.C.M.
1947, now section 37-61-405, MCA, that when an attorney
withdraws without consent of his client, the opposing party
must "notify" the unrepresented party to have counsel appear
before the former may proceed with the action. Appellants

-13-

now claim that respondent did not meet that requirement. We disagree.

In McPartlin we noted that there was no hard-and-fast rule on how the statutory "notice" must be given to the unrepresented party and stated:

> "We do not believe actual notice must be personally served on the unrepresented party opponent. But we do hold the represented party must make a positive showing he has attempted to communicate adequate notice to the unrepresented party. If the represented party can show he made a good-faith effort to notify the unrepresented party and advise him he should substitute counsel or appear in person, and the notice also sets forth the date of the next hearing or action in the matter pending, then the represented party will be deemed to have satisfied the requisites of section 93-2104, R.C.M. 1947." 582 P.2d at 1259.

Here, appellants were served with an order of the court requiring them to do what the "notice" asks them to do. In addition, the October 25, 1978 order was personally served on appellants, even though in McPartlin this Court deemed such a service not required by the statute. The order of the court exceeds in impact the "notice" from opposing counsel where both the notice and the order convey the same information. In this case, further notice of counsel would have been redundant and serve no useful purpose.

In arguing that the court's order of October 25, 1978, was improperly served so as to retroactively make void all intervening proceedings, the affidavit of James Kraus, Sr., filed on January 25, 1979, indicates that he knew he was not represented by counsel. Here, appellants had full knowledge on January 25, 1979. In addition, they had full notice of the court's order of that date giving them twenty days to file answers to the interrogatories. They chose to do nothing. Indeed, they did not even move the court for

reconsideration of that order during the twenty days between the service of the order upon them and the service of respondent's application for a default judgment. They chose not to appear at the time set for hearing the application for default judgment, even though respondent's notice was served upon them seven days before the hearing rather than merely the three days required by Rule 55, M.R.Civ.P. Following that, they did nothing for over thirty days after receipt from the clerk of the court of a notice of entry of judgment, a procedural courtesy not provided in the case of "first appearance" default. They did nothing following their receipt of the court order allowing the clerk to release their monies to respondent. Under these circumstances, we can see no reason to afford them the relief requested.

The District Court awarded respondent $3,150 for attorney fees where the amended complaint only asked for $3,000. This was not objected to at the District Court level. Now on appeal, appellants object to the additional $150. At the hearing on the application for a default dated March 1, 1979, respondent's attorney offered testimony to indicate that a reasonable attorney fee would be $3,150. In view of this fact we find no reason to reduce the amount awarded as being excessive.

The judgment of the District Court is affirmed with the additur of $150 for attorney fees for defending the same.

John Conway Harrison
Justice

-15-

We concur:

_____
Chief Justice

_____

_____

_____
Justices