

DA 07-0142

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 154

IN RE THE MARRIAGE OF:

MICHAEL L. HARDIN,

      Petitioner and Appellant,

  and

TANIA E. HARDIN,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DR 04-171
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Christopher J. Gillette, Law Office of Christopher J. Gillette, P.C.,
Bozeman, MT

      For Appellee:

            Tania E. Hardin (Pro Se), Belgrade, MT

Submitted on Briefs:  March 12, 2008

Decided:  April 29, 2008

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Appellant Michael L. Hardin (Michael) appeals an order of the Eighteenth Judicial District Court, Gallatin County, dissolving his marriage to Appellee Tania E. Hardin (Tania). We affirm.

¶2     We address the following issue on appeal:

¶3     Did the District Court err by denying Michael's request for a trial continuance, pursuant to § 37-61-405, MCA, and U. Dist. Ct. R. 10, after his counsel withdrew on the day of trial?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     On May 3, 2004, Michael petitioned the District Court for dissolution of his marriage to Tania. At that time, the parties had two children who were thirteen and eleven years old. Over the course of the next two years, the proceedings were postponed multiple times, first on the District Court's own motion, and then for reasons such as the parties' failure to complete mediation, as well as in response to three motions filed by Michael requesting a continuance. Ultimately, a trial date was set for September 20 and 21, 2006, nearly two and a half years after Michael petitioned for dissolution.

¶5     Throughout the course of the proceedings, Michael was represented by attorney James D. McKenna. However, on September 6, 2006—two weeks before trial was set to begin—Michael discharged McKenna as his attorney, apparently because McKenna had not provided Michael with copies of certain documents and had not filed contempt motions against Tania as Michael had requested. On September 14, 2006, McKenna filed a notice with the District Court of his intent to withdraw, advising the court that he had

2

sent Michael a statement of consent for Michael to sign, which he had not yet received back. On September 19, 2006, Michael filed his own Emergency Motion to Delay Start of Trial, arguing he did not live in Montana, did not have legal representation, had not been able to employ another attorney, and was unprepared to begin trial without representation. The District Court denied Michael's motion, and when trial began the following morning, September 20, 2006, McKenna formally moved to withdraw in light of his discharge by Michael.

¶6 The District Court granted McKenna's request to withdraw, but again refused Michael's request to postpone the trial to find new representation. Michael argued he should be allowed twenty days to find another attorney pursuant to Uniform District Court Rule 10. The District Court responded that the trial date would not be extended because it had been set for "way too long," and if Michael was going to change counsel, he needed to do it before trial. The District Court offered to require McKenna to stay as stand-by counsel to answer questions for Michael, but Michael declined.

¶7 To accommodate Michael, the District Court suggested that the parties and the court go through the basic requirements for the dissolution and get the uncontested facts on the record, after which the court would give Michael the rest of the day to visit with any counsel he had contacted in the previous two weeks. Michael reported that he had "spoken with several attorneys and no one is interested in taking this [case] at this point."

¶8 The District Court then allowed Tania's attorney to briefly question Tania about the marriage, the parties' and their children's ages, and the parties' occupations. Michael declined to participate because he did not have an attorney present and he wasn't "going

3

to act like one." The District Court then recessed the trial and gave Michael the rest of the day to find an attorney.

¶9    The following morning, Michael reported to the District Court that he had spoken to several attorneys, all of whom had declined to take his case. Michael again requested a continuance and the District Court again denied Michael's request. The District Court stated:

> I am going to deny the request for a further continuance, Mr. Hardin, and that is based on the fact that this case has been continued a number of times, that this trial date has been set for a length of time, that the issues are such that they impact not only you and Mrs. Hardin but they impact your children. And I don't think it's in their best interests to continue this matter any longer . . . .
>
>     I will give you some additional time after the trial to provide any additional evidence or file any motions that you might determine are appropriate, or if you obtain counsel, that they would feel it is [sic] appropriate as well. But I am going to require that we proceed with the trial today.

Because Michael was the petitioner, the District Court gave Michael the opportunity to start with his own testimony and any exhibits he wanted to submit. Michael responded—and repeated throughout the course of the trial—that he was not an attorney, did not choose to represent himself, and objected to the entire proceeding. Tania's attorney then questioned Tania on such subjects as the parties' incomes and Tania's and the children's expenses. Tania's attorney also elicited testimony from Tania regarding Michael's delinquency in paying the mortgage and insurance on the parties' shared home in lieu of child support. Tania's counsel then called Michael, but Michael was generally uncooperative when questioned about his income, past employers, shared property with

4

Tania, and expectations regarding Tania and the children's expenses, among other things. At the conclusion of Tania's case-in-chief, Michael made a brief statement to the District Court and conversed with the District Court about his children and frustration with his past visitation arrangements.

¶10 After testimony was taken, the District Court gave Michael thirty days in which to have a new attorney file a notice of appearance with the court. The court stated it would then work with Michael's and Tania's counsel to address any additional issues that needed to be dealt with. However, the District Court cautioned Michael that if he was unable to get counsel within a reasonable amount of time, the court would proceed to make a decision based upon the evidence before it.

¶11 Michael's current counsel, Christopher J. Gillette, filed his notice of appearance with the District Court on November 13, 2006, some fifty days after the conclusion of trial. Michael did not file any additional motions or request to provide additional evidence with the District Court, and Michael's counsel had no further contact with the District Court or Tania's counsel after filing his notice of appearance. On December 26, 2006, the District Court entered its Findings of Fact, Conclusions of Law, and Decree of Dissolution. On January 16, 2007, Michael filed his notice of appeal.

## STANDARD OF REVIEW

¶12 Because the facts in this case are undisputed, we simply review whether the District Court correctly interpreted the requirements of § 37-61-405, MCA, and U. Dist. Ct. R. 10. "We review the District Court's conclusions of law interpreting this statute to determine whether its conclusions are correct." *Quantum Electric, Inc. v. Schaeffer*,

5

2003 MT 29, ¶ 10, 314 Mont. 193, ¶ 10, 64 P.3d 1026, ¶ 10 (citing *Stanley v. Holms*, 281 Mont. 329, 333, 934 P.2d 196, 199 (1997)).

## DISCUSSION

**¶13    Did the District Court err by denying Michael's request for a trial continuance, pursuant to § 37-61-405, MCA, and U. Dist. Ct. R. 10, after his counsel withdrew on the day of trial?**

¶14    The statute and uniform district court rule at issue in this case are clear in their requirements but far from clear in their applicability to the circumstances here.  Section 37-61-405, MCA, regarding death or removal of an attorney, provides:

> When an attorney dies or is removed or suspended or ceases to act as such, a party to an action for whom he was acting as attorney must, before any further proceedings are had against him, be required by the adverse party, by written notice, to appoint another attorney or appear in person.

Likewise, U. Dist. Ct. R. 10 also addresses the death or removal of an attorney and reads:

(a) Whenever an attorney representing a party to an action, or in another civil proceeding of any kind, is removed, withdraws or ceases to act as such, said attorney must inform the court and all other parties of the full name and address of his client and any other information which the court may find appropriate to assist in contacting said party.

(b) When the attorney representing a party to an action or proceeding dies, is removed, withdraws, or ceases to act as such, that party, before any further proceedings are had against him must be given notice by any adverse party:
(1) That such party must appoint another attorney or appear in person, and
(2) The date of the trial or of the next hearing or action required in the case, and
(3) That if he fails to appoint an attorney or appear in person by a date certain, which may not be less than twenty days from the date of the notice, the action or other proceeding will proceed and may result in a judgment or other order being entered against him, by default or otherwise.

(c) Such notice may be by personal service or by certified mail to said party's last known address.

6

(d) If said party does not appoint another attorney or appear in person within twenty days of the service or mailing of said notice, the action may proceed to judgment. However, copies of all papers and documents required to be served by these rules and the Rules of Civil Procedure shall be mailed to said party at his last known address.

(e) In addition to the foregoing requirements of Rule 10 and before any change or substitution of attorney is effective, whether such change or substitution is occasioned by the death of the attorney or by his removal, withdrawal, ceasing to act, suspension or disbarment, the requirements of sections 37-61-403, 37-61-404 and 37-61-405, MCA, shall have been fully satisfied.

¶15 Michael argues this Court's holding in *Quantum Electric* required all proceedings to be stayed when McKenna withdrew on the day of trial. In *Quantum Electric*, the defendant's counsel moved to withdraw and submitted a proposed order allowing him to do so, asserting his clients had been uncooperative in proceeding with the quiet title action against them. *Quantum Electric*, ¶ 4. The district court signed the proposed order and allowed defense counsel to withdraw. The order was mailed to the defendants and alerted them that they had thirty days to notify the court if they had secured new counsel, and that their failure to do so would be deemed notice that they intended to proceed pro se. *Quantum Electric*, ¶ 5. After the defendants failed to attend multiple scheduled depositions, one defendant was personally served with notice of a deposition. He appeared at the deposition, requested and was refused a continuance, and left without being deposed. *Quantum Electric*, ¶ 6. The plaintiff moved for summary judgment, which the district court granted. *Quantum Electric*, ¶ 7.

¶16 Thereafter, the defendants did not retain counsel until a writ of execution was to be executed which removed them from their property. The defendants then moved to set aside the court's judgment, arguing the plaintiffs failed to give them the notice required

by § 37-61-405, MCA, when counsel withdraws. The plaintiff argued any failure to give the required notice was harmless because the defendants were given the same notice by the court's order, and they had actual notice of the proceedings, as evidenced by the defendant showing up for his deposition. *Quantum Electric*, ¶ 8. The district court agreed, but we reversed. We stated the general rule as follows:

> [O]pposing counsel has a duty to make a good faith effort, by written notice, both to notify the unrepresented party that he should retain counsel or appear in person and to notify the unrepresented party regarding the nature and timing of the next pending proceeding. Further, when a party loses representation and this duty is not fulfilled, the proceedings in the case are tolled until the notice requirements of § 37-61-405, MCA, and Rule 10, U.Dist.Ct.R., are met.
>
> . . . .
>
> [T]hat written notice must include the date of the next action required in the case. In addition, according to Rule 10, U.Dist.Ct.R., written notice must also include notice that if the unrepresented party fails to appoint an attorney or appear in person within twenty days from the date of the notice, the action or other proceeding will proceed and may result in a judgment or other order being entered against him.

*Quantum Electric*, ¶¶ 21, 27. This rule, we observed, ensures that the interests of the unrepresented party are properly protected. *Quantum Electric*, ¶ 27. In rebutting the dissent's argument that the defendants in *Quantum Electric* already had notice of the depositions because they were still represented when notice of the depositions was filed, we reiterated that "proceedings are suspended when the counsel files a motion to withdraw *without consent of the client* because the failure of communication asserted by counsel demonstrates that the client may not have notice." *Quantum Electric*, ¶ 32 (emphasis added).

¶17    Although the circumstances in *Quantum Electric* may appear similar to the present case at first glance, Michael's situation is not one contemplated by our holding in *Quantum Electric*. First, *Quantum Electric* assumes that the twenty-day notice requirement will provide time for an unrepresented party to obtain new counsel and prepare for future proceedings in the pending litigation. In other words, it assumes that future proceedings are more than twenty days away or could be stayed and rescheduled. The *Quantum Electric* rule does not contemplate counsel "withdrawing" during a trial. Here, McKenna withdrew on the morning of trial, and thus, the purpose of notifying Michael of "the next pending proceeding" makes little sense because he was literally standing in the middle of it. Michael did not need a twenty-day notice of the trial date, because the "next pending proceeding" had already arrived by the time McKenna "withdrew."

¶18    It could be argued that Michael still needed new counsel, a point which highlights another distinction about this case. *Quantum Electric*, as well as the cases on which it relies, involved cases in which counsel withdrew "without consent of the client." *Quantum Electric*, ¶ 32. The policy behind the notice requirement of § 37-61-405, MCA, is clearly to ensure that a party, abandoned by counsel in the midst of litigation, is not left hanging "out to dry." In contrast, Michael fired McKenna two weeks prior to trial and failed to obtain other representation before trial started. The point here is that McKenna's "withdrawal" was not occasioned by McKenna, but was required by Michael. Indeed, McKenna did not "withdraw" as much as he was discharged. This substantially changes the dynamics contemplated by *Quantum Electric* and the purposes that decision

9

serves. Whether Michael's discharge of McKenna was an intentional delay tactic or was necessitated by the circumstances is irrelevant because, either way, allowing Michael to delay the proceedings by halting the trial would essentially place control over the progress of the proceeding into the hands of Michael, rather than the District Court. In fact, rigid application of *Quantum Electric* to these circumstances would permit Michael to hire a new attorney and again discharge his attorney on the morning of the next trial, requiring another postponement. Such an assault on the functioning of the judicial system must be impermissible. *See State v. VonBergen*, 2003 MT 265, ¶ 21, 317 Mont. 445, ¶ 21, 77 P.3d 537, ¶ 21 ("[A] district court retains the authority to control the progress of the case.").

¶19 By shortening the first day of trial so that Michael could seek out new counsel, and by giving Michael thirty days after trial in which to obtain counsel and notify the court of further motions or evidence, the District Court compensated for McKenna's eleventh hour "withdrawal" and provided the notice and time period normally granted to a litigant whose counsel withdraws. Notably, even with a thirty-day period in which to obtain new counsel, Michael failed to do so; his current counsel did not appear until more than fifty days after the conclusion of the trial, and even then, Michael filed no additional filings with the District Court. More than three months after the conclusion of trial, the court entered its Findings of Fact, Conclusions of Law, and Decree of Dissolution.

¶20 Under the unusual circumstances of this case, the District Court did not err by denying Michael's request for another continuance.

10

¶21    Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

Justice James C. Nelson dissents.

¶22    I respectfully dissent from the Court's Opinion.

¶23    First, the "compensation" granted to Michael (Opinion, ¶ 19) is illusory. Granting Michael part of a day to retain counsel when the trial had already begun and then allowing him thirty days to retain counsel *after* the trial had ended is no accommodation at all. No attorney is going to walk into a contested case mid-trial without any opportunity to educate himself or herself about the client and the case or, even worse, try to salvage a case after the trial is over and the damage has been done. The court's "compensation" to Michael was simply an invitation for some attorney to commit malpractice.

¶24    Furthermore, the trial court ignored the plain language of § 37-61-405, MCA, and U. Dist. Ct. R. 10. The language of each is plain and unambiguous. When counsel for a party "is removed" or "ceases to act," the statutory and Rule-based notice must be given, and the party without counsel has twenty days to appoint new counsel. Contrary to the

11

language that this Court now reads into the statute—in direct violation of § 1-2-101, MCA—and into the Rule, there is no prohibition against a party terminating the services of counsel on the eve of trial, or for that matter, during trial, where counsel is not representing the client as the client wishes. Nor is there any language in either the statute or the Rule that limits the protections afforded to those situations where counsel withdraws more than twenty days from the next proceeding or where counsel has left the client "hanging 'out to dry.' " Opinion, ¶¶ 17-18.

¶25 These new "tests" articulated in the Court's Opinion at ¶¶ 17 and 18 are without any foundation in the actual language of either the statute or the Rule. Rather, as is obvious, these new requirements are judicially created from whole cloth and engrafted onto the statute and Rule given a palpable desire on the part of the Court to affirm this matter. Indeed, the Court cites not one authority supporting its creation of these new tests.

¶26 Moreover, this Court's decision in *Quantum Electric, Inc. v. Schaeffer*, 2003 MT 29, 314 Mont. 193, 64 P.3d 1026, does not support the Court's decision here. In that case, noting a "disparity" in the precedent interpreting the statute and the Rule, we observed that the present statute and Rule have a lineage dating back to 1895 and have been "strictly enforced." *Quantum*, ¶¶ 16-17 (citing *Endresse v. Van Vleet,* 118 Mont. 533, 538-39, 169 P.2d 719, 721 (1946)). We also emphasized that the notice must meet the requirements of the statute, and that one which does not, is ineffective. *Quantum*, ¶¶ 18, 19 (citing *McPartlin v. Fransen*, 178 Mont. 178, 185, 582 P.2d 1255, 1259 (1978); *In re Marriage of Whiting,* 259 Mont. 180, 184, 854 P.2d 343, 346 (1993); *In re*

*Marriage of Neneman,* 217 Mont. 155, 159, 703 P.2d 164, 166 (1985); *Montana Bank v. Benson,* 220 Mont. 410, 412, 717 P.2d 6, 7 (1986)).

¶27   Additionally, citing with approval our decision in *Stanley v. Holms*, 281 Mont. 329, 934 P.2d 196 (1997), we noted in *Quantum* that, where counsel withdrew in part due to an inability to communicate with his client in furtherance of the case, "it was unfair to allow the case to proceed while the withdrawal motion was pending" and that "opposing counsel had a duty to give the notice required by § 37-61-405, MCA . . . ." *Quantum*, ¶ 20 (citing *Stanley,* 281 Mont. at 337, 934 P.2d at 201).  We further stated in *Quantum* that

> "[w]hile this may pose some added inconvenience to the represented parties required to give the notice, . . . this burden is insubstantial when compared to the potential detriment that may be suffered by a litigant whose counsel has ceased to act on his client's behalf."

*Quantum*, ¶ 20 (quoting *Stanley,* 281 Mont. at 337, 934 P.2d at 201; *see also McWilliams v. Clem,* 228 Mont. 297, 310, 743 P.2d 577, 585-86 (1987)).

¶28   Moreover, we concluded in *Quantum* that the rule articulated in that case was in line with this Court's policy favoring judgment on the merits of a case.  *Quantum*, ¶ 29 (citing *Maulding v. Hardman,* 257 Mont. 18, 23, 847 P.2d 292, 296 (1993)).

¶29   Finally, and directly contrary to the Court's decision and concurring opinion here, we held in *Quantum* that even where the unrepresented party becomes unrepresented because of obstructionist tactics or the inability to communicate with counsel (even with consecutive attorneys); seeks to defeat the judicial process; benefits from obstructionist

13

behavior; or had actual notice of the proceedings, § 37-61-405, MCA, must be followed.

*Quantum,* ¶¶ 24-27.

> [C]onsidering the relative ease with which proper notice is given and in light of our precedent that the word "must" is mandatory . . . we hold that in order to properly protect the interests of the unrepresented party, the opposing party, as required by the plain language of § 37-61-405, MCA, must require the unrepresented party, by written notice, to appoint another attorney or appear in person. . . .
> By providing this clear rule, we do not intend to condone those who simply ignore the judicial process, but instead intend to provide a simple tool for those opposing them to proceed with their cause of action, secure in the knowledge that any judgment in their favor is final. Once proper notice is given, any continued refusal to participate in the proceedings by an unrepresented party may justly result in default judgment or other final judgment against their interests.

*Quantum*, ¶¶ 27, 28 (internal citations omitted).

¶30 We then went on to overrule two cases—*Audit Services v. Kraus Const., Inc.,* 189 Mont. 94, 615 P.2d 183 (1980), and *Sikorski & Sons, Inc. v. Sikorski*, 162 Mont. 442, 512 P.2d 1147 (1973)—to the extent those cases waived a failure of opposing counsel to comply with § 37-61-405, MCA. *Quantum,* ¶ 30. While, the concurrence maintains these cases are inapposite (Concurrence, ¶ 37), our point in overruling these decisions was to preserve the requirement of strict compliance with the unambiguous notice mandates of the statute and to preserve our policy favoring judgment on the merits. *See Quantum*, ¶¶ 24-26, 29.

¶31 In short, *Quantum* does not support the additional language and tests the Court has read into § 37-61-405, MCA, and U. Dist. Ct. R. 10, in this case. Indeed, our case law stands for precisely the opposite rule.

14

> [T]he general rule from [our prior] cases is that the opposing counsel has a duty to make a good faith effort, by written notice, both to notify the unrepresented party that he should retain counsel or appear in person and to notify the unrepresented party regarding the nature and timing of the next pending proceeding. Further, when a party loses representation and this duty is not fulfilled, the proceedings in the case are tolled until the notice requirements of § 37-61-405, MCA, and [U. Dist. Ct. R. 10] are met.

*Quantum*, ¶ 21.

¶32 Indeed, today, the Court ignores overwhelming precedent to create—from whole cloth and without any underpinning authority—a new rule. For the first time in our jurisprudence, we now insert a time requirement and an "intention" or "mental state" requirement into our case law interpreting the mandatory notice requirements of § 37-61-405, MCA, and U. Dist. Ct. R. 10. Apparently, no notice is required if the cessation or removal from representation occurs twenty or less days from the next proceeding. Opinion, ¶ 17. However, counsel will need to plumb the mindset of the unrepresented client and his or her counsel, and the trial court will, of necessity, need to hold an evidentiary hearing and enter findings of fact and conclusions of law determining the motivations of the unrepresented party in removing counsel or the motivations of counsel in ceasing to act. If the cessation or removal fails the "hanging-out-to-dry" test or the litigant-is-wresting-control-of-the-proceedings-from-the-District-Court test or the "assault-on-the-functioning-of-the-judicial-system" test (Opinion, ¶ 18)[1]—the elements

---

[1] The trial court's decision here was not grounded in any of these arguments or tests. To the extent that we can glean the District Court's rationale from the record before us, it appears that the court believed that once a trial date had been set for some undefined period of time ("too long," in this case) the statutory notice requirement was obviated and, moreover, that the statutory notice requirement applied only in criminal cases, but not in civil cases, as there was no "right to counsel" in the latter. *See* Transcript of

15

and application of these tests evidently being determined on an *ad hoc*, case-by-case basis—then the unrepresented party is deprived of the benefit of the notice requirements of the statute and the Rule.

¶33   We adopt this new non-statutory approach simply to affirm the trial court and to deprive the litigant of the benefit of the clear and unambiguous requirements of a statute and Rule because we viscerally believe that Michael's "eleventh-hour" (Opinion, ¶ 19) conduct should be punished.  However, neither we nor the trial court need ignore the plain language of § 37-61-405, MCA, and U. Dist. Ct. R. 10, to punish Michael.  We stated in *Quantum* that our decision there was "in no way intended to limit the sanctions available to the trial court for unresponsiveness to discovery requests or other sanctions available under the rules." *Quantum*, ¶ 30 (citing M. R. Civ. P. 37).  Michael can be punished without depriving him of the notice protections afforded by the statute, the Rule and our precedent.  Notwithstanding its authority to punish, the trial court still has a clear statutory obligation to require opposing counsel to give the notice required by § 37-61-405, MCA, and U. Dist. Ct. R. 10, and to toll the proceedings until the mandates of the Rule have been fulfilled.  Punishment can follow once the proceedings recommence and the unrepresented litigant's statutory twenty days has run.

¶34   Unfortunately, the sort of decision-making in which the Court engages here creates confusing precedents, encourages the practicing bar to ignore the law, and will inevitably result in more appeals to this already over-burdened Court.  Section 37-61-405,

---

Proceedings 2:14-19 (September 20 and 21, 2006).  There is no basis in our black-letter or jurisprudential law for either of these approaches, and the trial court manifestly erred in ruling on that basis.

16

MCA, U. Dist. Ct. R. 10, and the clear rule of our case law mandate that the District Court be reversed. I would so hold.

¶35 I dissent.

/S/ JAMES C. NELSON

Justice Patricia O. Cotter concurs.

¶36 I concur in the Court's Opinion. I write separately to further address the matters raised in the Dissent.

¶37 As does the majority, the Dissent cites *Quantum Electric*—which was written by the Dissent's author—as dispositive of the issues before us. In *Quantum Electric*, the Court conducted an overview of our previous cases interpreting § 37-61-405, MCA. We determined to overrule two of those cases, *Audit Services* and *Sikorski & Sons*, to the extent those cases waived a failure of opposing counsel to comply with § 37-61-405, MCA. *Quantum Electric*, ¶ 30. In the former case, where counsel had secured an order allowing him to withdraw his appearance on behalf of a party, we concluded that since the district court gave notice to the unrepresented party of his attorney's withdrawal and the requirement to appear by new counsel or in person within twenty days, such notice was sufficient. *Audit Services*, 189 Mont. at 105, 615 P.2d at 189. In *Sikorski*, we held that notice was not required because we agreed with California's interpretation of its statute, which was identical in terms to ours. The California court interpreted the statute

17

to require notice "only when an attorney has died or ceased to be an attorney and not when he ceased to act for his client in a particular case." *Sikorski*, 162 Mont. at 446, 512 P.2d at 1149. *See Quantum Electric*, ¶ 23. Thus, neither of these overruled cases is apposite here.

¶38 Notably, we also addressed another line of cases in *Quantum Electric* in which we held that written notice, pursuant to the statute, must be given and the failure to do so constitutes reversible error. One such case, addressed at length and with express approval in *Quantum Electric*, is *McPartlin v. Fransen*, 178 Mont. 178, 582 P.2d 1255 (1978). In my judgment, *McPartlin* implicitly supports the position taken by the Court here.

¶39 In *McPartlin*, the two attorneys representing the defendant moved for leave to withdraw their appearance in the midst of pretrial proceedings. They communicated their action by sending to their client's last known address a Notice of Withdrawal of Attorneys. A problem arose because counsel did not inform the defendant that what had been scheduled as a simple hearing three weeks hence had been converted by the court to a full trial on the merits. It was only when the defendant did retain new counsel—one day before the "hearing"—that the full trial setting was discovered. The court refused to grant the defendant's motion for continuance of the trial, and because counsel could not appear for a full trial the following day, the defendant's default and an ensuing judgment was entered. The defendant subsequently appealed on the grounds that the court erred in refusing to grant a continuance of the trial, given the insufficiency of the notice he received once his attorneys withdrew from the case. We reversed the district court and

18

remanded for a new trial, concluding that the opposing party, who knew of the full trial setting, should have complied with the predecessor statute to § 37-61-405, MCA, by giving notice of the trial proceeding to the defendant.

¶40  What we said in *McPartlin* with respect to the purpose of the statutory notice is significant to the case now before us.  In discussing the predecessor statute to § 37-61-405, MCA (§ 93-2104 RCM (1947)), which is identical in language to the present statute, we said:  "The obvious purpose of section 93-2104, is to provide notice to a party who might otherwise be taken unaware."  *McPartlin,* 178 Mont. at 183, 582 P.2d at 1258.  We went on to discuss the problem presented when a party is left at the eleventh hour without representation.  We said that "the over-riding purpose of our statute is to impose some duty on the opposing party to notify if he determines such party is, without his consent, no longer represented by counsel."  *McPartlin*, 178 Mont. at 186, 582 P.2d at 1259.  Thus, the Court in *McPartlin* clearly intended its ruling to apply in those cases where the unrepresented litigant was placed in that position through the actions of his counsel taken without his consent.  Such was the situation in both *McPartlin* and in *Quantum Electric.*  As the Court has pointed out, such is not the situation here.

¶41  I agree with the Dissent that the provisions of the notice statute should apply to unrepresented litigants, even if their lack of representation might well be a consequence of their own failure to cooperate with their attorneys.  However, if indeed we think that "the better rule is established by the *McPartlin* and *Stanley* line of cases," as we said in *Quantum Electric*, ¶ 27, then the rule should apply in those cases in which the attorney withdraws his or her appearance leaving the "unaware" client unrepresented, and not in

19

those cases where—as here—the client having full knowledge of the impending trial date fires his attorney just before the trial is to commence.  Therefore, I concur.

/S/ PATRICIA COTTER

Chief Justice Karla M. Gray joins in the Concurrence of Justice Patricia O. Cotter.

/S/ KARLA M. GRAY