No. 82-377
& 82-378

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

M. E. WALTERS,

          Plaintiff,

    -vs-

PAUL CAMPEAU,

          Defendant and Appellant,

FRED G. CARL AND JOAN A. CARL,

          Defendants and Respondents,
    and

WILLIAM P. CHILCOTE,

          Petitioner and Appellant.

ORIGINAL PROCEEDING: &
APPEAL FROM:  District Court of the Fourth Judicial District,
              In and for the County of Missoula,
              The Honorable Jack L. Green

COUNSEL OF RECORD:

     For Petitioner/Appellant:

          James J. Benn; Boone, Karlberg & Haddon, Missoula,
          Montana (argued)

     For Respondents:

          Moses Law Firm; Charles Moses (argued), Billings,
          Montana
          McChesney and Borg, Missoula, Montana
          William R. Baldassin, Missoula, Montana

Submitted:  May 31, 1983

Decided:  September 2, 1983

Filed:  SEP 2 - 1983

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

William P. Chilcote (Chilcote), not a party to the original action, seeks a Writ of Review and appeals from the determination by the District Court of the Fourth Judicial District, Missoula County, that Chilcote was in contempt of court, and that Fred G. Carl and Joan A. Carl (Carls) should therefore have judgment against him for $40,350. We reverse the judgment of the District Court.

While a number of issues have been stated by the parties, we restate the controlling issue: Does the evidence support the findings of the District Court, its conclusion of contempt by Chilcote, and its judgment of $40,350 against Chilcote?

The Carls entered into a contract for the construction by Paul Campeau (Campeau) of four duplexes in Missoula, Montana. During construction, a mechanic's lien was filed by plaintiff Walters. Walters obtained summary judgment against Campeau and is no longer a party to the controversies between Campeau and Carls.

After trial of the claims for relief by Carls against contractor Campeau, the Carls obtained judgment against Campeau on April 27, 1981 for breach of contract. The District Court ordered that the necessary repairs be made to correct substantial defects in the four duplexes, Campeau was ordered to pay to Carls the cost of the correction, repairs and related expenses, the total of which was not to exceed $30,000 per unit, i.e. $120,000. Campeau failed to complete the improvements or payments.

Carls recorded their $120,000 judgment against Campeau in Richland County, Montana. Campeau and Chilcote were engaged in a joint venture in Richland County where they were

constructing and selling residences. The Campeau-Chilcote joint venture had nothing to do with the Missoula County construction contract, and Chilcote did not in any way participate in the construction of the Carls' Missoula County duplexes.

In order to obtain title insurance required for the sale of the Richland County houses, Chilcote personally borrowed $120,000 from First National Bank in Missoula and deposited that $120,000 in Richland National Bank of Sidney, pursuant to a written agreement between the title and abstract companies and the bank whereby the $120,000 would protect the title to the Richland County properties against the Carls' judgment. That agreement provided that Chilcote was to be treated as the sole owner of the fund and that all funds were to be returned to Chilcote upon termination of the trust account.

Next the Carls moved the District Court to force Campeau's compliance with the April 27, 1981 court order. A hearing was held. The District Court issued an order on November 4, 1981, allowing Campeau to complete the repairs to the duplex under supervision of designated architects. Security for payment of materialmen and subcontractors was ordered in the form of an interest-bearing account established in the amount of $60,000. Campeau's attorney, William Baldassin, was to maintain the account in the name of William Baldassin, Trustee, to be used to pay materialmen and subcontractors. That order also required the Carls to release the property in Richland County from the lien of the April 27, 1981 judgment, so that "the defendant Campeau's funds can be released from the sale of the residences and be transmitted to Mr. Baldassin as Trustee." The order did not

name Chilcote in any manner and did not require or prohibit any conduct on his part.

Pursuant to the November, 1981 order, Carls executed partial releases of judgment on the Richland County properties. The releases were forwarded by Carls' counsel to Mr. Baldassin, Campeau's counsel. Campeau's counsel forwarded the releases to the abstract company in Sidney. In his letter forwarding the releases, Baldassin asked the abstract company to "notify the bank that the judgments have been released and that they [the bank] can release all monies held in the Chilcote account to me for deposit in my trust account."

At this point the testimony and understanding of Campeau's attorney, the abstract company and the bank is at variance. The attorney's letter to the abstract company did not condition recording of the releases upon the receipt by the attorney of the $60,000, but instead requested notification of the bank that it "can release" all monies held in the Chilcote account for deposit in the attorney's trust account. The attorney testified that he understood that he was to receive the $60,000 in return for the releases, and that he was not aware of any misunderstanding on this point between the officers of the abstract company or the bank and himself. In contrast, the officer of the abstract company testified that he did not understand this to be a conditional delivery of the releases, and he therefore recorded the releases, advised the bank of that recording, and furnished them a copy of the attorney's letter. In turn, the bank officer testified that he contacted his legal counsel, who advised him to return the $120,000 to Chilcote, which he did.

4

The sales of the Richland County houses were completed and Chilcote received the net sales proceeds, as well as the balance of the $120,000 deposit in the Richland Bank. Chilcote repaid his $120,000 personal loan to the Missoula bank.

On November 23, 1981 he paid $60,000 to Campeau as Campeau's share of their joint venture profits in Richland County. This is the action which the District Court found to be contemptuous in that it frustrated the November 4, 1981 order of the court requiring that $60,000 be held in a trust account with Mr. Baldassin as trustee. While Chilcote was not involved in the Missoula County construction, the contract problems or the court action between the Carls and Campeau, Chilcote was aware of the plan for a $60,000 trust account with Mr. Baldassin as trustee. Chilcote's testimony with regard to his $60,000 payment to Campeau is as follows:

"Q. You had some awareness of the supplementary hearing in October, did you not? A. Yes.

"Q. And you know that Mr. Baldassin wanted $60,000? A. Yes.

"Q. But did you have any knowledge that anyone had required you to provide that $60,000 to any of them? A. No.

"Q. What did you do with the money that Mr. Campeau had coming out of the proceeds of the sale? A. In November, you mean?

"Q. Yes. A. I paid it to him. He's got all the money.

"Q. At the time you paid it to him because you knew generally what was going on, did you tell him? A. I told him he better get that money down and give it to Bill Baldassin, right, Bill?

"Q. Did he acknowledge to you that he would do that? A. He said he wasn't going to get me in trouble.

"Q. That didn't prove to be accurate, did it? A. No." (emphasis added)

5

Campeau paid $2,650 to the Carls and $17,000 to Baldassin, which was deposited in the trust account. Campeau then disappeared and none of the parties were able to bring him before the court during the balance of the proceedings. At oral argument counsel advised the court that Campeau apparently was in Australia.

On December 30, 1981, Carls petitioned the District Court to find Baldassin, Campeau and Chilcote guilty of contempt for failure to obey the supplemental order. By order filed August 2, 1982, the District Court concluded that Chilcote "frustrated the order of this Court and prevented its execution and should be held in contempt of this Court and required to comply with the order . . . dated November 4, 1981." Judgment in favor of Carls was entered on August 10, 1982 against Chilcote in the amount of $40,350, together with costs of suit.

Chilcote then petitioned for a Writ of Review and also appealed. This consolidates challenges to the finding of contempt and to the money judgment. Does the evidence support the holding of contempt by the District Court?

The rule with regard to our review of contempt proceedings is well stated in our opinion in Matter of Graveley (1980), _____ Mont. ____, 614 P.2d 1033, 1039, 37 St.Rep. 1261, 1267, as follows:

> "It is the rule that on review of contempt proceedings, the Supreme Court determines only whether the District Court acted within jurisdiction, and whether or not the evidence supports the finding and order. State v. District Court of Twelfth Judicial Dist. (1968), 151 Mont. 41, 43, 438 P.2d 563; State v. Second Judicial Dist. Court (1935), 99 Mont. 209, 41 P.2d 1113."

Chilcote does not contend that the court does not have jurisdiction because he is not a party to the proceeding between the Carls and Campeau. Graveley establishes there is

no such limitation in Montana. In that case, the sheriff who was neither a party nor otherwise present in the courtroom was nonetheless found guilty of contempt for his disobedience of the order of the court.

The specific statute which applies is section 3-1-501, MCA, which in pertinent part states:

"(1)  The following acts or omissions in respect to a court of justice or proceedings therein are contempts of the authority of the court:

". . .

"(e)  disobedience of any lawful judgment, order, or process of the court;

". . .

"(i)  any other unlawful interference with the process or proceedings of a court;"

The pertinent portions of the District Court's August 2, 1982 findings of fact are as follows:

XIV.

"However the court finds that Mr. William Chilcote knew of the order of this Court and the requirements thereof through his attorney, through conversations and agreements with Mr. Campeau and through conversations with Mr. William Baldassin; . . . The Court further finds that Mr. Chilcote paid to Mr. Campeau two checks in the amounts of $45,000 and $15,000, making a total of $60,000, from the sale of said residences;

XV.

"That William Chilcote not only knew of the order of this Court and the requirements of said order, but contrary to such order did the things and performed the acts as herein described, frustrating the Court's order and enabling Mr. Campeau to not perform the improvements upon the premises, and prevented the delivery of $60,000 to be placed in trust as required by the order."

Section 3-1-501, MCA requires that there be a disobedience of a judgment, order or process, or other unlawful interference with process or proceedings. There was no judgment, order or process in any manner directed to Chilcote individually, and in the absence of any finding by

7

the court that there was a disobedience of a judgment, order or process, it is clear that the facts do not substantiate a finding of contempt under section 3-1-501(1)(e), MCA.

Therefore, we must conclude that the court found Chilcote guilty of contempt under subparagraph (i), by some unlawful interference with the process or proceedings of the court. There is nothing in the findings or in the evidence which shows any unlawful interference on the part of Chilcote with the process or proceedings, unless the facts can be stated in such a manner as to show that Chilcote in some manner interfered with the deposit of the $60,000 in Mr. Baldassin's trust account. We here make reference to the above-quoted testimony on the part of Chilcote. There is no evidence to contradict his testimony that he told Campeau that "he better get that money down and give it to Bill Baldassin." Campeau advised Chilcote he would not get him in trouble, which is of course exactly what he did.

In analyzing the evidence and the findings, we do find evidence to sustain the conclusion of the District Court that Chilcote knew of the requirement for the $60,000 deposit with Mr. Baldassin. The facts also show that there was no requirement by order, instruction or otherwise, that Chilcote deliver the $60,000 to Campeau's attorney, rather than to Campeau himself. There are no facts to support the conclusion of the District Court that Chilcote frustrated the court's order and prevented the $60,000 from being placed in trust. The facts only show that Chilcote delivered the $60,000 to Campeau with instructions to deliver the same to his own counsel, Mr. Baldassin. Unfortunately, Chilcote trusted Campeau when Campeau was not worthy of that trust and "left the country." In a similar manner, the Carls, their attorney and the District Court also extended trust to

8

Campeau, believing that he would complete the construction according to his obligations and make payments as required. Unfortunately he proved unworthy of that trust.

We can understand and sympathize with the sense of frustration on the part of the District Court, which devoted so much time and effort to work out a just solution of the controversies between the Carls and Campeau, and concluded with the unfortunate result that by court order the liens on the Richland County property had been released and yet the $60,000 had not been deposited in trust for the protection of the Carls. It is clear that there was a frustration of that order of the District Court. The facts show that it was Mr. Campeau (and not Mr. Chilcote) who frustrated the court's order and failed to deliver the entire $60,000 as he was required to do. Clearly Campeau was in contempt of the court. Clearly Chilcote did not prevent the payment by Campeau of the $60,000 into trust by his delivery of the funds to Campeau with instructions they be delivered to Campeau's own attorney.

We therefore hold that there is not sufficient evidence to support the finding and order of contempt. As a result, the judgment for $40,350, together with costs of suit, must fall. Having reached this conclusion, there is no need to address the other issues raised by the parties.

We reverse the finding and order of contempt on the part of Chilcote, reverse the judgment entered for the Carls against Chilcote, and remand for appropriate action by the District Court.

Justice

9

We concur:

*Frank I. Haswell*
Chief Justice

*John Conway Harrison*

*Daniel J. Shea*

*[signature]*

*R. C. [signature]*

Justices

Mr. Justice John C. Sheehy dissenting:

I dissent.

In this case, Chilcote, knowing of the existence and provisions of the District Court order, is guilty of an unlawful interference with the proceedings of the District Court. Section 3-1-501(i), MCA. For such contempt, he is liable to the power of the District Court, even though he is not a party to the underlying action. The power of the District Court reaches to any person or officer who is in contempt of the authority of the court by misbehavior in office or by any other unlawful interference with the process of proceedings of the court. See McPartlin v. Fransen (1978), 178 Mont. 178, 582 P.2d 1255.

This Court is failing to recognize that a district court has the power to enforce its order by contempt proceedings. Our statutes recognize this, when they include:

> "Section 3-1-520. Imprisonment to compel perform-
> ance. When the contempt consists in [sic] the
> omission to perform an act which is yet in the
> power of the person to perform, he may be
> imprisoned until he shall have performed it. In
> that case, the act must be specified in the warrant
> of commitment."

What the District Court was doing in this case was attempting to follow the provisions of our statutes with respect to its power. We should modify the order of the District Court in this case so that a fine is levied against Chilcote for his past contempt in frustrating the lawful order of the court, and imprisonment ordered until he performs the act which the District Court had decreed in its order, unless it is now beyond his power to do so.

In a civil contempt proceeding, a fine is imposed as punishment for past contemptuous conduct and imprisonment is ordered where the defendant refuses to do an affirmative act required by an order mandatory in its nature. See U.S. v. Montgomery (D. Mont. 1957), 155 F.Supp. 633. One who refuses to perform a judicial order which he is able to perform may be imprisoned until he complies with such order. State ex rel. Lay v. District Court, Fourth Judicial District in and for Ravalli County (1948), 122 Mont. 61, 198 P.2d 761.

The only question before this Court is the propriety of the District Court order holding Chilcote in contempt. He is in contempt as long as he does not deposit with the trustee named in the order the sum of $60,000. Whether eventually he may be liable for the full amount of $60,000 to the remaining parties is a matter of a future determination after trial by a court. But, at this juncture, the question before this Court and before the District Court, is, should Chilcote have been required to place in deposit with the trustee the sum of $60,000? The majority opinion goes afield from this question and raises complications which are unnecessary to its decision. All we have to decide here is whether Chilcote, a nonparty, is subject to the contempt jurisdiction of the District Court. In this case, all of us seem to recognize that he is. Since he is subject to the contempt power of the court, the lawful order of the court, which otherwise appears proper, ought to be permitted. Otherwise, the District Court is powerless to enforce its orders.

I would, therefore, modify the judgment of the District Court to require that Chilcote follow the order by depositing $60,000 with the trustee; and, unless it is beyond his power to do so, I would enforce the order through the permitted

fine, and to such jail time as is necessary to bring about compliance with the court's order. Section 3-1-520, MCA. Once the money is on deposit with the trustee, the remaining questions as to the extent of Chilcote's liability could be litigated.

_____
                    Justice