No. 02-760

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 21

JOHN SMART,

        Plaintiff and Appellant,

  v.

TONI MOLINARIO,

        Defendant, Respondent and Cross-Appellant.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Chouteau, Cause No. DV 2000-30,
Honorable John Warner, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            John Smart, Pro Se, Helena, Montana

        For Respondent:

            John E. Bohyer and Jack Jenks, Phillips & Bohyer, P.C.,
Missoula, Montana

Submitted on Briefs:  December 23, 2003

Decided:   January 28, 2004

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      John Smart was the plaintiff in a negligence action against defendant Toni Molinario arising from an automobile accident in November of 1998. The District Court dismissed Smart's action with prejudice as a sanction for dilatory discovery practices. Smart now appeals. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

¶2      On the cold and snowy night of November 8, 1998, Smart was traveling on Highway 87 heading towards Havre. Outside the town of Fort Benton, Secondary 386 intersects Highway 87, with a stop sign facing travelers on Secondary 386. Molinario approached this intersection and stopped at the sign. The roads were snow-packed and icy with poor visibility due to a lightly falling snow. As Smart came around the bend approaching the intersection his vehicle began to skid on the ice. Smart's 1978 Ford Bronco slid broadside for at least 175 feet before colliding with Molinario's 1994 Pontiac. Both vehicles ended up in the ditch with Molinario's on top of the stop sign. Smart moved his Bronco twice before officers arrived.

¶3      The accident was investigated by Officer Ayers of the Montana Highway Patrol and Officers Hulme and Oeleis of the Chouteau County Sheriff's Department. The physical evidence of Smart's skid marks through the ice crusted snow, the debris field at the point of impact, and the final resting point of the vehicles led all three officers to reach the same conclusions: that immediately prior to the impact, Molinario's vehicle was resting upon the white stop bar on Secondary 386, thirty-two feet back from the intersection with Highway

2

87 and that Smart was driving too fast for the conditions. Smart was cited for a basic rule violation.

¶4 Despite the physical evidence, the officers' conclusions and the citation, Smart maintained that Molinario had failed to stop. According to Smart, he applied his brakes and entered the skid when he saw Molinario continue to pull forward, and, thus, she caused the accident. Smart obtained an attorney and filed a complaint against Molinario on July 11, 2000.

¶5 Discovery proceeded with Molinario serving interrogatories and requests for production of documents. These requests included: Smart's medical records for the last eleven years; a statement of the subject matter, substance of the facts, and substance of each opinion to which each expert would testify; and copies of any and all reports prepared by expert witnesses. Five days before the scheduled trial, on January 31, 2001, as Smart was taking the video deposition of his physician, Dr. Nelson, Molinario became aware that a large portion of Dr. Nelson's medical file on Smart had not been identified or produced in response to discovery.

¶6 Immediately thereafter, Molinario moved to dismiss the plaintiff's complaint with prejudice as a sanction for the discovery violations or, in the alternative, to preclude Dr. Nelson from testifying. Before the court ruled on this motion, Smart informed the court that he had fired his attorney, who similarly indicated that he could not continue to represent Smart. The court then vacated the trial which had been set for the very next day, allowed Smart's attorney to withdraw and took Molinario's motion under advisement.

3

¶7 Despite Smart's repeated requests for more time to retain new counsel, the court subsequently dismissed his claim with prejudice. Smart now claims on appeal that the dismissal of his claim with prejudice denied him due process because he was not given sufficient time to obtain the services of another attorney. He claims that his cognitive disability made it more difficult to get a new attorney given that his previous attorney did not give him the complete file in a timely manner. Molinario responds that the dismissal with prejudice was an appropriate sanction for discovery abuse and cross-appeals claiming that the District Court should have granted summary judgment in favor of defendant on the issue of liability.

DISCUSSION

¶8 We review a trial court's imposition of discovery sanctions for an abuse of discretion. *Lewistown Propane Co. v. Moncur,* 2002 MT 349, ¶ 22, 313 Mont. 368, ¶ 22, 61 P.3d 780, ¶ 22. This Court has consistently deferred to a district court's imposition of sanctions because "[t]he trial judge is in the best position to know . . . which parties callously disregard the rights of their opponents and other litigants seeking their day in court. The trial judge is also in the best position to determine which sanction is the most appropriate." *Cass v. Composite Indus. of Am., Inc.*, 2002 MT 226, ¶ 19, 311 Mont. 406, ¶ 19, 56 P.3d 322, ¶ 19 (quoting *Dassori v. Roy Stanley Chevrolet Co.* (1986), 224 Mont. 178, 180, 728 P.2d 430, 431).

¶9 A sanction under Rule 37(d), M.R.Civ.P., is appropriate when a party fails:

(1) to appear before the officer who is to take the deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request.

¶10 Here, in responding to discovery requests, Smart withheld some seventy-five to eighty pages of documents with crucial information regarding his case for damages. The previously unproduced portions of Dr. Nelson's file included the report and deposition of Dr. Wu, to whom Dr. Nelson had referred Smart for a Positron Emission Tomography (PET) scan. Dr. Nelson stated in his deposition that he intended to rely on the report and deposition testimony of Dr. Wu.

¶11 Other undisclosed items from the file included letters between Smart and Dr. Nelson regarding the extent and nature of his injuries with Smart's handwritten notes which contradicted his deposition, the names of two other doctors who had consulted or participated in Smart's case, and letters from Dr. Nelson requesting MRI examinations of Smart. The previously undisclosed documents all had bearing on Smart's claim for damages. In light of the foregoing, a sanction for discovery abuse was proper.

¶12 We next analyze the appropriateness of the sanction in relation to the abuse. In *Schuff,* we stated that in our review of sanctions for discovery abuse, we may consider the following factors: (1) whether the consequences imposed by the sanctions relate to the extent and nature of the actual discovery abuse; (2) the extent of the prejudice to the opposing party which resulted from the discovery abuse; and (3) whether the court expressly warned the

5

abusing party of the consequences. *Schuff v. A.T. Klemens & Sons,* 2000 MT 357, ¶ 72, 303 Mont. 274, ¶ 72, 16 P.3d 1002, ¶ 72.

¶13    In *Smith v. Butte-Silver Bow County* (1996), 276 Mont. 329, 916 P.2d 91, we refused to uphold the imposition of the sanction of dismissal with prejudice because it bore little relationship to the extent and nature of the discovery abuse which was curable with further discovery. Furthermore, the imposition of dismissal was harsher than what the court had forewarned. *Smith,* 276 Mont. at 338-40, 916 P.2d at 96-97. However, it is not necessary for the court to warn of sanctions before imposing them for a violation of Rule 37(d), M.R.Civ.P. In *Jerome v. Pardis* (1989), 240 Mont. 187, 783 P.2d 919, we upheld a dismissal with prejudice when the plaintiff concealed information by way of failing to produce material portions of his doctor's file. *Jerome*, 240 Mont. at 193, 783 P.2d at 923. Also, we have upheld the sanction of imposing liability and presuming that punitive damages were appropriate where a defendant's dilatory tactics showed he had little interest in having the case adjudicated on its merits. *Maloney v. Home & Investment Center, Inc.,* 2000 MT 34, ¶ 36, 298 Mont. 213, ¶ 36, 994 P.2d 1124, ¶ 36.

¶14    In the present case, Smart engaged in dilatory tactics calculated to hide his weak case from Molinario. Smart has also consistently demonstrated little interest or ability in adjudicating this case on its merits. By way of example, when the court denied Smart's request to vacate the second trial setting, Smart's response was to fire his attorney and thereby avoid going to trial. Molinario has a right to have this matter resolved. She has been

6

prejudiced by having to deal with Smart's dilatory tactics. Such tactics must not be rewarded. The sanction of dismissal with prejudice was appropriate.

¶15   Because we conclude Smart's case was appropriately dismissed, we do not need to address Molinario's cross-appeal on the issue of summary judgment. To the extent Smart's brief purports to raise other issues, they are not supported by citation to legal authority. Thus, pursuant to Rule 23(a)(4), M.R.App.P., we also decline to address those issues. The order of the District Court is affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ PATRICIA O. COTTER
/S/ JIM RICE