No. 04-779

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 254

CULBERTSON-FROID-BAINVILLE
HEALTH CARE CORPORATION, doing
business under the name and style of
ROOSEVELT MEMORIAL MEDICAL
CENTER AND NURSING HOME,

        Plaintiff and Respondent,

   v.

JP STEVENS & CO. INC., a corporation,

        Defendant and Appellant.

APPEAL FROM:    The District Court of the Fifteenth Judicial District,
                 In and For the County of Roosevelt, Cause No. DV 99-26,
                 Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Shane D. Peterson & Ken G. Hedge, Crowley, Haughey, Hanson,
           Toole and Dietrich, Williston, North Dakota

      For Respondent:

           Laura Christoffersen, Knierim Fewer & Christoffersen,
           Culbertson, Montana

Submitted on Briefs:  August 23, 2005

Decided:  October 18, 2005

Filed:

_____
                         Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Roosevelt Medical Memorial Center and Nursing Home (Roosevelt) sued JP Stevens & Co. Inc. (Stevens) in connection with an allegedly faulty roof it purchased from Stevens. In response to Stevens's violation of its order that required Stevens to respond to discovery requests, the District Court struck Stevens's defenses and entered judgment in favor of Roosevelt on the issue of liability. After holding a hearing to determine the amount of damages, the District Court awarded Roosevelt $143,713.

¶2     Stevens now appeals the severity of the sanctions imposed by the District Court as well as its calculation of damages. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Roosevelt purchased a roofing system from Stevens in 1987. After the roofing system was installed on the Roosevelt County Memorial Hospital in Culbertson, Montana, a Stevens representative inspected it. Stevens then issued a ten-year warranty on the roof. Before the expiration of the warranty period, the roof began to leak, allowing water to enter into and damage the interior of the hospital. After attempts to repair the roof proved unsuccessful, Roosevelt replaced the entire roof.

¶4     In March 1999, Roosevelt filed a complaint against Stevens in the District Court, asserting claims of negligence, product liability, breach of express warranty, and breach of implied warranties of merchantability and fitness for a particular purpose. Stevens denied having sold the roof to Roosevelt, denied liability on all claims and asserted a variety of affirmative defenses. The case stagnated until August 8, 2002, when Roosevelt, having

2

changed counsel, propounded its first discovery requests. At that time, the trial was scheduled to begin on October 8, 2002, and discovery was scheduled to close on August 30, 2002.

¶5 On January 14, 2003, after twice continuing the trial date, the District Court vacated the trial date and ordered the parties to undergo mediation. The District Court ordered the parties to attend the mediation with "responsible decision-makers" who were "prepared to fully discuss and explore" settlement. Roosevelt attended the mediation with several representatives who had full authority to settle the case. Stevens attended the mediation with a representative who apparently lacked authority to settle the case. At Roosevelt's request, the District Court later imposed sanctions on Stevens for violating its order, requiring it to reimburse Roosevelt's costs incurred in attending the mediation.

¶6 Meanwhile, on January 27, 2003, Roosevelt, having received no response to its August discovery requests, moved the District Court to compel responses. On February 3, 2003, Stevens replied to the court that the motion to compel should be denied because it had served responses to Roosevelt that very day. Stevens's "response" consisted of objections to virtually all of the twenty-eight requests for productions and interrogatories issued by Roosevelt. Stevens provided complete responses to only two of Roosevelt's requests, provided incomplete responses to three other requests, and referred Roosevelt to documents it already possessed in response to two other requests. The remaining twenty-one requests

3

evoked only a litany of objections.[1] Stevens never sought a protective order in conjunction with any of its objections.

¶7 On March 19, 2003, the District Court ordered Stevens to fully respond to certain of Roosevelt's discovery requests within thirty days. On May 19, 2003, after receiving no further responses from Stevens, Roosevelt moved the court to strike Stevens's defenses as a sanction for failing to comply with the court's order, pursuant to Rule 37(b), M.R.Civ.P. Stevens responded to this motion on June 10, 2003, indicating that despite its efforts to comply with the order, it was encountering difficulty in identifying and producing the materials Roosevelt had requested. Stevens had not formally requested additional time to respond. Stevens still had not requested a protective order.

¶8 After holding a hearing on Roosevelt's motion for sanctions, the District Court issued an order on July 31, 2003, striking Stevens's defenses and entering judgment for Roosevelt on the issue of liability. The District Court found that despite the passage of nearly a year and in disregard of the court's order, Roosevelt's requests remained largely unanswered. Moreover, the court found that Stevens did not provide a "reasonable excuse" for its failure to respond to the discovery requests or comply with the court order.

---

[1]For instance, Stevens protested that: "roofing system" is overly vague and ambiguous; it was unable to locate sales literature, service manuals or warranty information about the roof sold to Roosevelt because the sales were made by a distributor (of which Stevens had only one in Montana); it could not identify a single witness, lay or expert; "issues and matters raised in the complaint" was too vague and ambiguous to permit Stevens to identify officers of the company who were authorized to testify to those matters; and it was unaware of the existence of files of studies, tests, or experiments performed with the roofing system.

¶9 The District Court held a hearing to determine the amount of damages, at which Stevens presented no evidence and called no witnesses to testify. Pursuant to theories of negligence and breach of contract, the District Court then awarded Roosevelt the full cost it had incurred in replacing the roof, as well as consequential damages to cover the costs of repairs and maintenance performed on the roof prior to its replacement and to compensate Roosevelt for the estimated damage to the interior of the hospital. The court concluded that, due to the extensive irreparable failure within the warranty period, the damages should not be offset by any amount, even though Roosevelt had utilized the roof for nine years.

## STANDARD OF REVIEW

¶10 We review a district court's imposition of sanctions under Rule 37, M.R.Civ.P., for an abuse of discretion. *Maloney v. Home & Investment Center, Inc.*, 2000 MT 34, ¶ 27, 298 Mont. 213, ¶ 27, 994 P.2d 1124, ¶ 27 (citation omitted). We consider whether "the trial court in the exercise of its discretion act[ed] arbitrarily without the employment of conscientious judgment or exceed[ed] the bounds of reason, in view of all the circumstances, ignoring recognized principles resulting in substantial injustice." *Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 27, 303 Mont. 274, ¶ 27, 16 P.3d 1002, ¶ 27 (citation omitted). We review a district court's award of damages to determine whether the court abused its discretion. *Kiely Construction, L.L.C. v. City of Red Lodge,* 2002 MT 241, ¶ 102, 312 Mont. 52, ¶ 102, 57 P.3d 836, ¶ 102 (citation omitted).

## DISCUSSION

### *Issue 1*

***Did the District Court abuse its discretion when it struck Stevens's defenses pursuant to Rule 37(b) and entered judgment in favor of Roosevelt on the issue of liability?***

¶11    The Rules of Civil Procedure serve the purpose of "secur[ing] the just, speedy, and inexpensive determination of every action." Rule 1, M.R.Civ.P.  If a party fails to obey an order to permit discovery, the district court may issue an order striking out pleadings or entering default judgment against the disobedient party. Rule 37(b)(2)(C), M.R.Civ.P.  Such sanctions exist to deter dilatory parties. *Landauer v. Kehrwald* (1987), 225 Mont. 322, 324, 723 P.2d 839, 840.  We remain cognizant that "[t]he trial judge is in the best position to know which parties callously disregard the rights of their opponents and other litigants seeking their day in court (and) also in the best position to determine which sanction is the most appropriate." *Schuff*, ¶ 69 (citations and quotations omitted).

¶12    Stevens argues that the District Court imposed an excessively harsh sanction when it struck Stevens's defenses and granted judgment in favor of Roosevelt on the question of liability.  Stevens contends that striking its pleadings was not well-tailored to the actual extent of its discovery violations or to the prejudice suffered by Roosevelt.  Stevens insists that its initial objections to the discovery requests were valid and that its delay subsequent to the District Court's order was unavoidable.  Stevens suggests that Roosevelt suffered no prejudice from its failure to obey the order because Roosevelt previously had dawdled in prosecuting the case.

¶13    Roosevelt contends that the District Court properly exercised its broad discretion to manage discovery when it struck Stevens's defenses.  Roosevelt notes that Stevens was

sanctioned only after failing to respond to discovery requests for nearly a year and effectively disregarding the District Court's order by making no effort to supplement its deficient responses, even after Roosevelt had moved for sanctions. Roosevelt also contends that Stevens's frivolous appeal further evinces its dilatory tactics. Therefore, Roosevelt asks this Court to award it attorney fees.

¶14   In assessing the propriety of discovery sanctions imposed pursuant to Rule 37(b), M.R.Civ.P., we apply a three-part test. We consider whether the consequence inflicted via the sanction: (1) relates to the extent and nature of the actual discovery abuse; (2) relates to the extent of the prejudice to the opposing party which resulted from the discovery abuse; and (3) is consistent with the consequences expressly warned of by the District Court, if a warning was actually issued. *Smith v. Butte-Silver Bow County* (1996), 276 Mont. 329, 339-40, 916 P.2d 91, 97. In addition to these three factors, we will consider a party's disregard of the court's orders and authority. *McKenzie v. Scheeler* (1997), 285 Mont. 500, 516, 949 P.2d 1168, 1178.

¶15   We note that the phrasing of the *Smith* test in our cases over the past nine years has created the potential for confusion over the correct application of the third prong of the test. We now seek to resolve any such confusion. We previously restated the third prong of the test as "whether the court expressly warned the abusing party of the consequences." *See Schuff*, ¶ 72; *Maloney*, ¶ 35; *Xu v. McLaughlin Research Institute for Biomedical Science, Inc.*, 2005 MT 209, ¶ 26, 328 Mont. 232, ¶ 26, 119 P.3d 100, ¶ 26; *Henricksen v. State*, 2004 MT 20, ¶ 58, 319 Mont. 307, ¶ 58, 84 P.3d 38, ¶ 58; *Smart v. Molinario*, 2004 MT 21, ¶ 12,

7

319 Mont. 335, ¶ 12, 83 P.3d 1284, ¶ 12; *Patterson v. State Dept. of Justice, Motor Vehicle Div.*, 2002 MT 97, ¶ 19, 309 Mont. 381, ¶ 19, 46 P.3d 642, ¶ 19 (utilizing this phrasing of the three-part test first announced in *Smith*). In none of these cases did we reverse sanctions because a district court failed to expressly warn the abusing party of the sanctions it ultimately imposed. Indeed, we have affirmed sanctions that were imposed without express warning by a district court. *See Xu*, ¶ 30 (noting that the *defendant* had warned the plaintiff that it would *seek* sanctions if the plaintiff failed to comply with the court's order to attend a deposition). Therefore, we now clarify that the third prong of the *Smith* test requires only that the sanctions imposed be consistent with those of which the trial court expressly warns a party. Thus, this factor only applies if the trial court issues an express warning.

¶16 We first consider whether striking Stevens's defenses relates to the extent and nature of Stevens's discovery abuses. In *Smith*, the plaintiff had responded to a discovery request regarding its expert witnesses by providing their names and the general subject matter of their anticipated testimony, but not the "substance of the facts" or bases for their opinions, as required by Rule 26(b)(4)(A)(i), M.R.Civ.P. *Smith*, 276 Mont. at 334, 916 P.2d at 94. After the trial court ordered the plaintiff to provide additional information about the expert witnesses' opinions and the bases for them, the plaintiff failed to supplement its responses. *Smith*, 276 Mont. at 335, 916 P.2d at 94. We reversed the trial court's dismissal of the plaintiff's case as exceedingly harsh, noting that the plaintiff's failure to comply with the discovery order, although "totally insupportable[,]" was "relatively limited" and did not amount to total concealment. *Smith*, 276 Mont. at 340, 916 P.2d at 94. In contrast, we have

8

affirmed dismissal of a plaintiff's case where the plaintiff failed to attend a court-ordered deposition and failed completely to supplement his "incomplete, inappropriate, and unacceptable" initial responses to written discovery requests, despite a court order to do so. *Xu*, ¶¶ 9-11, 37; *see also McKenzie*, 285 Mont. at 515-16, 949 P.2d at 1177-78 (affirming dismissal of plaintiff's case when plaintiff, without explanation, continuously failed to provide complete responses to discovery requests and failed to comply with the trial court's order to do so).

¶17    Like the plaintiff in *McKenzie*, Stevens has continuously failed to completely respond to Roosevelt's discovery requests.  As in *McKenzie*, this unresponsiveness prevented Roosevelt from assessing the merits of Stevens's defenses and effectively challenging them. Moreover, Stevens has inhibited Roosevelt's ability to build an affirmative case by denying Roosevelt access to necessary information—information accessible only to Stevens.  Unlike *Smith*, this is not a case of relatively limited obstruction of discovery.  Stevens's responses to discovery requests can only be described as evasive, woefully incomplete and tantamount to complete silence.  Over five months elapsed between Roosevelt's discovery requests and Stevens's initial response, during which time the scheduled close of discovery had come and gone, as had the thirty-day statutory deadline for responding or objecting to interrogatories, Rule 33(a), M.R.Civ.P., and requests for production, Rule 34(b), M.R.Civ.P.  Stevens did not even request, let alone procure, a protective order, as necessary to excuse a failure to respond to discovery requests that one finds objectionable.  Rule 37(d), M.R.Civ.P.  Indeed, Stevens responded with objections only after Roosevelt had moved for an order to compel

responses. Several of these objections are best described as frivolous, as a cursory review of the documents requested (and finally produced, in part, several months after judgment had been entered against Stevens) would have obviated these objections.[2] Stevens provided "substantive" responses to seven of Roosevelt's twenty-eight requests, two of which merely referenced documents already in Roosevelt's possession, three of which were extremely general and incomplete, and two of which were minimally adequate. Stevens did not even respond to the court's order until over seven weeks after the court's mandated deadline for Stevens to provide Roosevelt with complete responses. Stevens responded only after Roosevelt had moved for sanctions, at which point it merely professed its inability to meet the already-past deadline,[3] but included no supplementary responses to Roosevelt's requests. Moreover, Stevens previously had suffered a less severe sanction for violating the District Court's order that it bring responsible decision-makers to the mediation. This sanction apparently did not deter Stevens from persisting in its refusal to permit discovery and its general disregard of the court's authority. Stevens's ubiquitous violations of the trial court's orders and the rules governing discovery pertained to all of Roosevelt's theories of recovery

---

[2]For instance, Stevens objected to Roosevelt's reference to the "roofing system" as overly vague and ambiguous, even though Stevens's own promotional materials use these words repeatedly, both in text and banner headings, to refer to the very product sold to Roosevelt.

[3]If Stevens were actually unable to comply with the court-ordered deadline for the discovery responses, it should have informed the court of this inability before the deadline expired, if not at the time when the order was issued. Its self-serving assertion of its inability to respond in the time allotted is suspect, at best, when issued well after the deadline and only in response to a motion seeking sanctions.

and all of Stevens's purported defenses.  Such flagrant, complete and persistent disregard of the District Court's orders and Montana's Rules of Civil Procedure warrant the consequence eventually inflicted upon Stevens by the District Court.

¶18    The striking of Stevens's defenses likewise relates to the extent of the prejudice suffered by Roosevelt.  When a failure to comply with discovery procedures effectively halts the discovery process, it results in impermissible prejudice to the opposing party. *McKenzie*, 285 Mont. at 516, 949 P.2d at 1177.  Even though the District Court did not explicitly make a finding of the extent of prejudice to Roosevelt, we may infer from the striking of Stevens's defenses and entry of judgment for Roosevelt that the District Court found prejudice sufficient to warrant such sanctions. *See McKenzie*, 285 Mont. at 516, 949 P.2d at 1177 (applying identical reasoning to affirm dismissal of plaintiff's case with prejudice).  Here, the discovery process was not merely halted; due to Stevens's recalcitrance, it effectively never began.  As noted above, Stevens's unresponsiveness prevented Roosevelt from assessing the merits of the proffered defenses and building its case-in-chief, forcing Roosevelt to incur mounting litigation costs while proceeding under a "cloud of uncertainty." *See Patterson*, ¶ 21.  Roosevelt was forced to attend a mediation conference, prepared to settle, without the benefit of information that might have shed light on the merits of the case. In order to garner any response whatsoever from Stevens, Roosevelt first had to file various motions, increasing its burden with almost no corresponding increase in its access to the pertinent facts.  Contrary to Stevens's argument, any delay that occurred previous to Roosevelt's propounding its discovery requests, whether attributable to Roosevelt or Stevens,

11

is simply irrelevant to the question of the extent of prejudice which resulted from the discovery abuse.

¶19    Stevens further contends that Roosevelt suffered no prejudice because Stevens's violation of the court's order was not willful.  Stevens argues that Roosevelt points to no evidence of its bad faith in violating the court's order.  The only evidence that Stevens proffered of its good faith efforts to comply with the court's order was its attorney's affidavit, which indicated that he had been working with Stevens's representatives to locate the requested material since the court issued its order, but had encountered difficulties in identifying and producing the material.  This affidavit, however, "has to be accepted for what it actually is—a self-serving document drawn by appellants' attorney. The general rule is that affidavits 'are commonly regarded as weak evidence, to be received with caution,' and that 'they are not conclusive of the facts stated therein even though not contradicted by counteraffidavits.'" *Audit Services, Inc. v. Kraus Construction, Inc.* (1980), 189 Mont. 94, 103, 615 P.2d 183, 188, *overruled on other grounds by Quantum Electric, Inc. v. Schaeffer*, 2003 MT 29, ¶ 30, 314 Mont. 193, ¶ 30, 64 P.3d 1026, ¶ 30  (citation omitted).  Here, we note that the affidavit provided by Stevens came more than seven weeks after the deadline for providing the court-ordered responses and only after Roosevelt had moved for sanctions. Moreover, Stevens is simply incorrect that Roosevelt must demonstrate that it delayed the proceedings willfully by violating the court's order.  "[I]t is the attitude of unresponsiveness to the judicial process, regardless of the intent behind that attitude, which warrants sanctions." *Xu*, ¶ 24 (quoting *McKenzie*, 285 Mont. at 508, 949 P.2d at 1172 (citations

12

omitted)). Stevens manifested a disregard for the rules of discovery and an attitude of unresponsiveness to the court's orders throughout the discovery process. Stevens stubbornly refused to even acknowledge Roosevelt's request until Roosevelt forced it to do so by filing a motion to compel. Stevens's initial response consisted largely of objections; but these objections came several months too late and were not accompanied by a request for a protective order, which might have excused its failure to provide substantive responses. Rule 37(d), M.R.Civ.P. When this Court cannot make a ready, confident and accurate determination of a party's good faith compliance with the discovery process, we will presume the correctness of a district court's action in imposing sanctions. *McKenzie*, 285 Mont. at 515, 949 P.2d at 1177 (citations omitted). Accordingly, we conclude that the sanctions imposed by the District Court relate sufficiently to the extent of the prejudice suffered by Roosevelt.

¶20 The third prong of the *Smith* test—the requirement of consistency between the consequences explicitly warned of by the trial court and the sanctions actually imposed—is not an issue here. The District Court did not issue an explicit warning of the consequences that would follow if Stevens failed to obey its order. Rule 37(b)(2), M.R.Civ.P., adequately informed Stevens of the consequences that could follow should it continue to disregard the court's orders and authority. That Stevens disregarded this provision, along with several other discovery rules, does not therefore burden the trial court with the responsibility to explicitly warn of the obvious. Licensed attorneys who litigate in Montana courts ought to

13

know the rules governing such litigation. Judges ought not be made responsible for constantly rehashing them.

¶21 In light of Stevens's unwavering disregard of the court's orders and authority, we conclude that the District Court did not abuse its discretion under Rule 37(b), M.R.Civ.P., when it struck Stevens's defenses and granted judgment in favor of Roosevelt.

## Issue 2

### *Did the District Court err in calculating damages?*

¶22 Stevens argues that the District Court erroneously interpreted the law of damages for tort and breach of contract. It contends that the court should not have awarded Roosevelt the full pecuniary value of a replacement roof, but should have deducted an amount that reflects the value actually realized by Roosevelt during the nine years for which it used the roof. Roosevelt responds that this is a question of the application of law to the facts presented at the damages hearing. It asserts that, having introduced no evidence of the diminution in value of the roof resulting from its defects or the value actually realized through use of the roof, Stevens may not challenge the damages awarded. Roosevelt also notes that Stevens failed to provide a transcript of the damages hearing, which prevents this Court from determining what evidence, if any, Stevens did offer regarding the appropriate deduction in damages.

¶23 Stevens argues that the proper damages measure in tort claims involving property damage is either the diminution in market value, or the cost of repair. The District Court concluded, however, that Roosevelt's nine years of using the roof should not be used as a

14

deduction. Stevens must provide this Court with the record necessary for determining the merits of this appeal. Rules 9(b), 10(a), M.R.App.P.; *see Huffine v. Boylan* (1989), 239 Mont. 515, 517, 782 P.2d 77, 78 (dismissing an appeal when the appellant failed to provide the transcript that was necessary for resolution of the issue raised on appeal). Stevens did not provide this Court with a transcript of the damages hearing. Without a transcript of the damages hearing, this Court cannot determine whether Stevens presented any evidence of the value that Roosevelt realized by utilizing the roof for nine years. Without such evidence, the District Court lacked a factual basis to determine the proper amount by which to offset the full cost of replacing the roof. The record contains no indication of what evidence was before the District Court at the damages hearing. Such information is essential to the resolution of this issue. Stevens has not supplied us with a record by which to assess the District Court's conclusion, and we will not speculate as to what the evidentiary bases for its decision may have been. Stevens's argument with respect to the District Court's calculation of damages pursuant to contract law fails for the same reason.

¶24 Roosevelt asks this Court to award attorney fees on appeal. Roosevelt asserts that Stevens's failure to provide a transcript indicates that the sole purpose behind this appeal is further delay; therefore, such a sanction is warranted. We disagree. Although a transcript of the damages hearing is required to determine the validity of the damages award, a transcript is not necessary to determine whether the District Court abused its discretion in imposing sanctions pursuant to Rule 37, M.R.Civ.P. For this issue, the record suffices. Moreover, although we affirm the Rule 37 sanction imposed by the District Court, Stevens's

arguments on this issue are not so frivolous as to warrant this Court imposing sanctions pursuant to Rule 32, M.R.App.P. Accordingly, Roosevelt's request for attorney fees is denied.

¶25 The District Court did not abuse its discretion when it struck Stevens's defenses pursuant to Rule 37(b), M.R.Civ.P., and entered judgment in favor of Roosevelt. The appellant failed to present any evidence that could establish that the District Court abused its discretion in calculating the damages it awarded to Roosevelt. Accordingly, we affirm.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ BRIAN MORRIS
/S/ JIM RICE
/S/ JOHN WARNER

16