FILED

05/10/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0470

DA 21-0470

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 90N

WILLIAM D. PRATT, individually and as
Managing Member of PRATT RANCH, LLC,
a Montana Limited Liability Company and
as a Member of PRATT COMMERCIAL
PROPERTY, LLC, a Montana Limited
Liability Company,

        Plaintiff and Appellee,

   v.

THOMAS A. PRATT, individually and as a
Member of PRATT RANCH, LLC, a Montana
limited liability company and as a Member
of PRATT COMMERCIAL PROPERTY, LLC,
a Montana Limited Liability Company,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV-19-1506
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Erika R. Peterman, Sova, PLLC, Missoula, Montana

      For Appellee:

        Brice A. Fredrickson, Kristin L. Omvig, Rocky Mountain Law Partners,
PC., Kalispell, Montana

Submitted on Briefs:  April 6, 2022
Decided:  May 10, 2022

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Thomas A. Pratt ("Tom") appeals the following orders of the Thirteenth Judicial District Court, Yellowstone County: (1) the May 4, 2020 order appointing Martin R. Connell, C.A.C., Bval, D.M.V. as special master; (2) the March 1, 2021 order issuing sanctions against him; and (3) the August 12, 2021 order granting summary judgment to William D. Pratt ("Bill") and requiring Tom to pay two-thirds of the special master costs and reasonable attorney fees to Bill. We affirm.

¶3 This matter concerns a partition of real property along with the accounting, winding up, and dissolution of Pratt Ranch, LLC, and Pratt Commercial Property, LLC. Brothers Tom and Bill Pratt each owned, as tenants-in-common, a one-half undivided interest in two ranching operations in Yellowstone and Valley counties, totaling around 40,000 acres, including state, county, and Bureau of Land Management leases. Together, Tom (45.23%), Bill (45.23%), and Tom's wife (9.54%) own Pratt Commercial Property, LLC.

¶4 In 2018, Tom began to exclusively manage the Yellowstone County "Basin Ranch Unit," as well as a Pratt Ranch bank account at Wells Fargo. In January 2019, Bill opened an account at First Community Bank in Hinsdale and contributed $50,000 from his personal bank account to manage the Valley County "Hinsdale Unit."

¶5     In October 2019, Bill filed a Complaint for Partition of Real Property, Dissolution and Winding Up of Pratt Ranch, LLC and Pratt Commercial Property, LLC, accusing Tom of commingling funds and making unauthorized personal loans to and from company accounts. Tom answered and counterclaimed, asserting breach of fiduciary duty, mismanagement, conversion, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.

¶6     On February 4, 2020, the parties stipulated to Connell's appointment as a single referee. On April 24, 2020, the District Court held a hearing on an emergency motion from Bill to appoint Connell as special master pursuant to M. R. Civ. P. 53. The basis of Bill's motion was that Wells Fargo had recently noticed its intent to declare two loans totaling almost $3 million and secured by the Basin Ranch in default. Wells Fargo threatened to foreclose on the property and increase the interest rate from 4% to 8% on May 15, 2020, resulting in an annual increase of more than $117,000 in interest.

¶7     At the hearing, Connell testified to his role and strategy as referee. Tom argued that Connell was biased against Tom. Tom testified that he disagreed with Connell's approach to resolve the Wells Fargo issue; that he "didn't need" Connell to help him obtain financing; and that there was no "emergency" basis to support Bill's motion to appoint Connell as special master. While he conceded that the parties had stipulated to Connell's appointment as sole referee, Tom asserted that he would not have done so had he known the full extent of Connell's "long history of relationship with [one of Bill's attorneys]." Tom discussed his personal efforts to obtain financing and negotiate a forbearance of the increase to the interest rate with Wells Fargo. Tom testified, "Marty [Connell] and I don't

3

trust each other. So, I can't move forward with him as a single referee." Bill argued that the dispute was complicated, the special master would help both the court and the parties, and that none of Tom's objections provided a legal basis to deny Connell's appointment. Connell testified, "I'm really not in this thing to make everybody happy. I'm in this thing to try and make an equitable division of the property so both can go forward. But I have absolutely nothing against [Tom], and my plan is to go forward." The District Court appointed Connell as special master, determining that "I think this thing is going to blow up if we don't have more control here."

¶8 In October 2020, Bill retained an accountant to review financial information regarding Pratt Ranch and issued a subpoena to review Tom's personal bank records. In December 2020, the court ordered Tom to produce relevant bank records by December 31, 2020. Tom did not produce the records or request an extension. On January 4, 2021, the District Court scheduled a hearing, requiring Tom to show cause why it should not impose sanctions for Tom's failure to comply. On January 5, 2021, Tom filed three separate motions, including motions to continue or vacate the show cause hearing, extend his time for production, and to withdraw counsel. The court denied all but his motion to allow Tom's attorney to appear telephonically at the hearing.

¶9 On January 11, 2021, Tom submitted incomplete and unsealed documents. On January 13, 2021, the District Court sealed the documents, continued the show cause hearing, and ordered additional production from Tom. The District Court outlined the submission's numerous deficiencies, including Tom's failure to provide any information on 12 Wells Fargo accounts and five accounts "heavily intermixed" with the Wells Fargo

4

accounts. In its order, the court noted that even the limited bank statements Tom did provide showed checks that were written from Pratt Ranch and Pratt Commercial Property to Tom Pratt and were deposited by Tom Pratt, and vice versa. Tom subpoenaed Bill's personal financial information. After an in camera review, the court declined to require Bill to turn over his personal banking records to Tom.

¶10 After the court's deadline had passed, Tom provided a second deficient submission for in camera inspection. On March 1, 2021, the District Court ordered sanctions against Tom pursuant to M. R. Civ. P. 37(b)(2)(A)(ii) for failing to produce all relevant bank records and a "woefully incomplete submission" that "exhibited the same issues as Tom's first submission." Tom had again produced bank statements that were only copied on one side; incomplete and duplicate records of checks issued from the accounts; and "no deposit receipts emails, correspondence, or written documentation." The court's sanctions prohibited Tom from "oppos[ing] the allegations of commingling, unauthorized conversion or taking of the parties' funds or personal assets, or any other presently unresolved monetary claims." Even after the imposition of these sanctions, Tom failed to produce the records as ordered.

¶11 On August 12, 2021, the District Court granted Bill's motion for summary judgment and dismissed Tom's counterclaims with prejudice. The court found that Tom had failed to establish any disputed material facts by more than mere denial or speculation. Because of Tom's noncompliance with court orders and deadlines, the court ordered Tom to pay two-thirds of the special master fees and Bill's reasonable attorney fees. On appeal, Tom argues that the District Court erred when it: (1) appointed Connell as special master;

5

(2) ordered discovery and sanctioned Tom for discovery abuses; (3) granted summary judgment to Bill; and (4) awarded fees and costs to Bill. We address each issue in turn.

¶12 Our standard of review for discretionary trial court rulings is abuse of discretion. *Crowley v. Valley W. Water Co.*, 267 Mont. 144, 150, 882 P.2d 1022, 1025 (1994); *see Pankratz Farms, Inc. v. Pankratz*, 2004 MT 180, ¶ 81, 322 Mont. 133, 95 P.3d 671 (holding the district court's decision to appoint a special master was not an abuse of discretion). "The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Jarvenpaa v. Glacier Elec. Coop., Inc.*, 1998 MT 306, ¶ 13, 292 Mont. 118, 970 P.2d 84. Under M. R. Civ. P. 53, a court may refer to a special master an action to be tried by a jury only when the issues are complicated; or to be tried by the court only on a showing that some exceptional condition requires the reference or in an accounting. M. R. Civ. P. 53(a)-(b)(1)(B); *see also McCormick v. Brevig*, 2004 MT 179, ¶ 54, 322 Mont. 112, 96 P.2d 697 ("Rule 53, M.R.Civ.P., allows a district court to appoint a master in complicated cases to examine a matter and make a report thereon.").

¶13 On appeal, Tom argues that the court erred when it appointed Connell over Tom's objections because there was no emergency requiring the court's appointment of a special master, Connell was an inappropriate appointment as he had a longstanding relationship with Bill's attorney, and Connell was biased against Tom. Bill argues that the District Court's decision to appoint Connell was well within its discretion due to the complicated nature of the case partitioning thousands of acres of ranch land from two ranching operations, as well as the winding up and dissolution of two limited liability companies

6

and the distribution of significant personal property (i.e., commercial building, equipment, livestock, hay, and chattel). Bill maintains that Tom's allegations regarding Connell's biases against Tom were unsupported.

¶14 It is undisputed that Connell is an established Montana broker with more than 40 years of experience in valuating farm and ranch operations and financial management. At the hearing, the District Court solicited argument from both parties and spoke at length with Connell and Tom. The court determined the case presented adequate exigent circumstances to appoint a special master, reasoning that because of the vast and complicated property involved, and noting Tom's independent efforts to secure financing and negotiate interest payments: "I think this thing is going to blow up if we don't have more control here." The District Court did not abuse its discretion by appointing Connell as special master. Tom presented no facts to support his claims that Connell was actually biased against him, or that the District Court acted without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice to Tom.[1] *Jarvenpaa*, ¶ 13.

---

[1] Tom argues on appeal that he was denied due process when Connell was appointed special master over his objections. Tom has presented no authority to support his position that due process "offers no other principled choice than to vacate the order appointing Connell as Special Master and remand the case for a trial on the merits." It is not this Court's "obligation to conduct legal research on [a party's] behalf, to guess as to his precise position, or to develop legal analysis that may lend support to his position." *Pankratz Farms, Inc.*, ¶ 82 (affirming a district court's appointment of a special master and declining to address appellant's unsupported argument on appeal to remove the special master on remand). We decline to address Tom's unsupported argument on appeal that due process requires us to vacate and remand the District Court's order.

7

¶15 We review a district court's discovery ruling for an abuse of discretion. *McCully v. U.S. Bank*, 2015 MT 100, ¶ 22, 378 Mont. 462, 347 P.3d 247. "The District Court has inherent discretionary power to control discovery based on its authority to control trial administration." *Henricksen v. State*, 2004 MT 20, ¶ 35, 319 Mont. 307, 84 P.3d 38. Subject to the limitations imposed by Rule 26(b)(2)(C), parties may obtain discovery regarding "any non-privileged matter that is relevant to any party's claim or defense." M. R. Civ. P. 26(b).

¶16 "Compliance with discovery rules and orders is essential to the efficient and fundamentally fair administration of justice on the merits." *Mont. State Univ.-Bozeman v. Mont. First Judicial Dist. Court*, 2018 MT 220, ¶ 20, 392 Mont. 458, 426 P.3d 541. If a party fails to obey an order to provide or permit discovery, the court may "prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." M. R. Civ. P. 37(b)(2)(A)(ii).

¶17 When a party's failure to comply with discovery procedures effectively halts the discovery process, it results in impermissible prejudice to the opposing party. *McKenzie v. Scheeler*, 285 Mont. 500, 516, 949 P.2d 1168, 1177 (1997). We generally defer to a trial court's imposition of sanctions because "the trial judge is in the best position to know . . . which parties callously disregard the rights of their opponents" and "determine which sanction is the most appropriate." *Smart v. Molinario*, 2004 MT 21, ¶ 8, 319 Mont. 335, 83 P.3d 1284. We consider the following criteria in reviewing whether a sanction is an abuse of discretion: (1) whether the consequence imposed relates to the extent and nature of the discovery abuse, relates to the extent of the resulting prejudice to the opposing party,

8

and is consistent with the consequences expressly warned of by the district court if a warning was actually issued; and (2) a party's disregard of the court's orders and authority. *Culbertson-Froid-Bainville Health Care Corp. v. JP Stevens & Co. Inc.*, 2005 MT 254, ¶ 14, 329 Mont. 38, 122 P.3d 431. "When litigants use willful delay, evasive response, and disregard of court discretion as part and parcel of their trial strategy, they must suffer the consequences." *Maloney v. Home & Inv. Ctr., Inc.*, 2000 MT 34, ¶ 34, 298 Mont. 213, 994 P.2d 1124 (quoting *Owen v. F.A. Buttrey Co.*, 192 Mont. 274, 280, 627 P.2d 1233, 1236 (1981)); *see also Eisenmenger by Eisenmenger v. Ethicon, Inc.*, 264 Mont. 393, 406-07, 871 P.2d 1313, 1321 (1994) (finding that giving evasive and incomplete answers to discovery requests and failing to supplement those answers was willful bad faith, demonstrating "intolerable gamesmanship and obstructiveness").

¶18 Tom does not claim any exception to production under M. R. Civ. P. 26(b)(2)(C), but argues the District Court "*sua sponte* conducted discovery on Bill's behalf" and that the bank records it ordered him to produce were irrelevant to Bill's pleaded allegations.

¶19 The District Court sought to perform in camera inspections of both parties' personal financial records, which were relevant to Bill's request for an accounting, winding up, and dissolution of the parties' joint business ventures. The court found that even the limited bank records Tom provided supported Bill's claim that Tom had comingled personal and business finances, but the extent to which these transactions required an equalization payment or a payment of damages from Tom to Bill was unclear. Because the bank records were non-privileged and relevant to Bill's claims, the District Court did not abuse its

discretion by ordering Tom to produce his personal financial information for in camera review.

¶20    The District Court held that by twice failing to obey the court's discovery orders, and then by providing a "woefully incomplete submission," Tom "willfully acted to deprive [the court] and [Bill] of knowledge regarding relevant financial transactions." Accordingly, the District Court concluded "sanctions [were] necessary to remedy, punish, and deter this non-compliance." The court expressly warned Tom that it was considering sanctions in its January 4, 2021 order for a show cause hearing. Despite the court's subsequent orders and admonishments on January 26, 2021, and February 12, 2021, Tom's serial noncompliance continued. The District Court did not abuse its discretion by sanctioning Tom's noncompliance under M. R. Civ. P. 37(b)(2)(A)(ii).

¶21    We review a district court's ruling on motions for summary judgment de novo, using the same M. R. Civ. P. 56 criteria used by the district court. *Chapman v. Maxwell*, 2014 MT 35, ¶ 7, 374 Mont. 12, 322 P.3d 1029. Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c)(3); *Bird v. Cascade Cty.*, 2016 MT 345, ¶ 9, 386 Mont. 69, 386 P.3d 602. Once the moving party has met its burden, the opposing party must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact. *McConkey v. Flathead Elec. Coop.*, 2005 MT 334, ¶ 19, 330 Mont. 48, 125 P.3d 1121.

¶22    Tom argues that the District Court erred in granting summary judgment to Bill because there were genuine issues of material fact regarding Bill's entitlement to an

10

equalization payment and Tom's counterclaims, including whether Bill had the authority to open the Hinsdale account in the first place. Bill argues the District Court correctly found evidence supporting the court's equalization payment from Tom to Bill and maintains that Tom's opposition and counterclaim allegations do not create a genuine factual dispute because they are either not materially relevant or amount to nothing more than conclusory, speculative accusations without supporting documentation.

¶23 After a review of all documents submitted by the parties during discovery, the District Court found that there was substantial evidence to conclude Bill is entitled to the $235,991.34 equalization payment. Because we agree that Tom failed to provide any counterevidence beyond mere accusations and speculation as to materially relevant facts, the District Court properly granted summary judgment to Bill for the equalization payment and winding up of the companies.

¶24 As to the District Court's dismissal of Tom's counterclaims, Tom argues that "Bill offers no undisputed facts supporting summary judgment on [counts I-IV] of Tom's counterclaim." The District Court granted Bill's summary judgment motion because, as to Claim I – Breach of Fiduciary Duty, "Tom does not point to a single transaction where a breach occurred." The court found that Tom's other claims, mismanagement, conversion, breach of the implied covenant of good faith and fair dealing, and unjust enrichment, "are similarly unsupported." There is no material or substantial evidence to support any of Tom's counterclaims in the record. Tom's conclusory and speculative statements failed to raise any genuine issues of material fact. The District Court did not err in granting summary judgment to Bill.

11

¶25 A district court's determination to grant attorney fees is reviewed for an abuse of discretion. *In re Estate of Boland*, 2019 MT 236, ¶ 21, 397 Mont. 319, 450 P.3d 849. Section 37-61-421, MCA, provides that "[a]n attorney or party to any court proceeding who, in the determination of the court, multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney fees reasonably incurred because of such conduct."

¶26 Tom argues that his motions and the conduct for which he was sanctioned were not vexatious. Bill contends that the litigation was unnecessarily complicated and protracted by Tom's vexatious conduct and lists numerous specific instances where Bill incurred significant attorney fees in response to Tom's questionable motions, continued discovery abuses, and misrepresentations to the court. The District Court considered Tom's conduct in its entirety. The District Court did not abuse its discretion by awarding reasonable attorney fees to Bill for unnecessarily increasing the cost of litigation.

¶27 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court did not err in appointing Connell as a special master or in granting summary judgment to Bill. The court's impositions of sanctions and attorney fees against Tom were not an abuse of discretion. We affirm.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR


Justice Jim Rice has recused himself and did not participate in the decision of this case.